146 N.J. Super. 476 (1977)
370 A.2d 57
VIRGINIA CILUFFO, PLAINTIFF-APPELLANT,
v.
MIDDLESEX GENERAL HOSPITAL, DEFENDANT, AND H. MADDATU, M.D., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 26, 1976.
Decided February 3, 1977.
*478 Before Judges HALPERN, ALLCORN and BOTTER.
Mr. George F. Hendricks argued the cause for appellant.
Mr. Richard J. Toniolo argued the cause for respondent (Messrs. Morgan, Melhuish, Monaghan & Spielvogel, attorneys; Mr. Robert Monaghan on the brief).
The opinion of the court was delivered by BOTTER, J.A.D.
Plaintiff appeals from the dismissal of her medical malpractice action against defendant Dr. Maddatu *479 at the conclusion of her proofs. No appeal was taken from the earlier entry of a summary judgment in favor of defendant Dr. Litt or from the dismissal with prejudice and without objection of her action against defendant Middlesex General Hospital.
The evidence showed that plaintiff injured her neck in the late evening of April 25 or the early morning hours of April 26, 1972, when she fell down a flight of stairs while visiting the apartment of a friend. She was experiencing pain but did not report to the emergency room at the Middlesex General Hospital until after 4 P.M. on April 26. She was seen there by defendant Maddatu, x-rays were taken, and she was sent home with a cervical collar, medication for her pain and instructions for rest and further care.
The next morning Dr. Litt, a radiologist, reviewed the x-rays and asked that plaintiff report back to the emergency room for further studies because the original x-rays showed abnormal angulation in her cervical spine. Neither a second set of x-rays nor a series of other x-rays known as tomograms revealed a fracture, although the abnormal angulation was substantiated. More sophisticated examination was then made by millimeter tomograms. These finally revealed a fracture of the cervical spine in the area of C-2.
Plaintiff was then treated for the fracture. She was placed in skeletal traction, which involved inserting tongs in her skull. Complications developed from this procedure, namely blood poisoning caused by drainage from the scalp incision, bronchitis and pneumonia. The pneumonia developed around May 15 as a result of the blood poisoning.
There was evidence to support plaintiff's contention that Dr. Maddatu did not comply with appropriate standards of medical care when she sent plaintiff home without making further studies to determine the extent of her injury. However, the trial judge dismissed the action against Dr. Maddatu for several reasons. He found that the evidence did not support the conclusion that the delay in treatment was the cause of any of the complications that prolonged plaintiff's *480 treatment and recovery. Dr. Litt, who was called as a witness for plaintiff, testified that in his opinion the delay in further treatment from April 26 to April 27, a period of less than 24 hours, did not cause the infection or blood poisoning, the bronchitis or the pneumonia which complicated plaintiff's recovery. Although another medical witness for plaintiff expressed the conclusionary opinion that the short delay did cause the complications in her condition, that witness, an internist, testified on cross-examination that he could not say how long plaintiff would have remained in traction had her condition been diagnosed promptly. As for the blood poisoning and pneumonia, this same witness admitted that he could not "speculate as to what would have been the case if she had been admitted immediately." Finally he conceded that: "I can't say directly that the infection was caused by delay, that is correct."
In this state of the evidence we conclude that the trial judge properly ruled that plaintiff could not charge Dr. Maddatu for complications in her recovery, specifically including the blood poisoning, bronchitis and pneumonia, since they were not causally related to the delay in treatment caused by Dr. Maddatu's conduct.
The trial judge also dismissed plaintiff's claim for added pain and suffering for the period between her release from the emergency room and the time she reported back to the hospital for further treatment which was allegedly caused by defendant Maddatu's malpractice. Plaintiff had previously accepted $30,000 in settlement of her claim against the owner of the premises where she fell. In dismissing her claim against Dr. Maddatu, the trial judge stated, in effect, that the claim for pain and suffering during the period of less than 24 hours during which treatment was delayed would not support a verdict in excess of the $30,000 already paid to plaintiff. The trial judge concluded that plaintiff would not be entitled to any further recovery from Dr. Maddatu unless the injuries caused by her wrongdoing exceeded $30,000.
*481 We conclude that the trial judge erred in dismissing plaintiff's claim against Dr. Maddatu for damages suffered because of the delay in treatment during the initial 24 hour period. Certainly the jury could have reached the logical conclusion that plaintiff's recovery, hence her pain and suffering, was prolonged by the period of time before proper treatment was undertaken. Although plaintiff proved no other consequences of this delay, she was entitled to be compensated for the pain and suffering endured for the period of the delay, if she proves that Dr. Maddatu was negligent and if plaintiff has not already received full compensation from the settling tortfeasor for all her injuries.
In Daily v. Somberg, 28 N.J. 372, 384 (1958), the court held that plaintiff's settlement with and release of a motorist who caused his injuries would not release defendant doctors for medical malpractice in treating those injuries unless the release was intended to have that effect. The court held that without such intent the action against the treating doctors for malpractice would not abate unless it was shown that plaintiff had been fully compensated for his injuries by the settling tortfeasor. The court said:
* * * If it should appear at the trial that the plaintiff has received full compensation from Dealer's for the injuries allegedly sustained at the hands of the doctors, then admittedly he will receive no further recovery. If, on the other hand, it should appear that he has received partial compensation from Dealer's for such injuries, the amount of the partial compensation will be credited against any sum otherwise recoverable by the plaintiffs; in no event will there be duplicating compensation to plaintiff or duplicating liability on the part of the defendants. [at 386]
It is this language, "the amount of the partial compensation will be credited against any sum otherwise recoverable by the plaintiff," which may have led the trial judge astray in this case. However, the cases cited by Justice Jacobs in Daily v. Somberg, at 386, clarify the quoted language and elucidate the rule. The phrase, "the amount of partial compensation," refers to partial compensation which may have *482 been received from the settling tortfeasor for "such injuries" as were caused by the negligence of the successive tortfeasors, the doctors.
When a plaintiff settles with the first of successive independent tortfeasors we usually do not know whether that settlement constituted payment in full for all claims. The initial tortfeasor (here, the apartment owner) is potentially liable for all the natural and proximate injuries that flow from the initial tort, including the consequences of medical treatment for the injuries caused by his wrong. Knutsen v. Brown, 96 N.J. Super. 229, 235 (App. Div. 1967). However, questions of liability may make plaintiff's recovery from either tortfeasor uncertain. Thus, a claimant will normally seek to recover as much as possible against the first tortfeasor, by settlement or judgment, especially when recovery against a successive independent wrongdoer is in doubt. This means that the first recovery may include payment for some or all of the injuries later suffered at the hands of a second tortfeasor.
The degree of injury caused by the second tortfeasor adds another variable. It may be small in comparison with the injuries directly caused by the first tortfeasor, as in the case here, or the initial injury may be small in comparison with injuries caused by the succeeding wrong. Thus, as here, where plaintiff has settled with the first tortfeasor and claims that she was not paid for all of her injuries, she is entitled to have the injuries caused by the successive independent tortfeasor assessed and compared with the damages recoverable for all of her injuries. If the settlement exceeds plaintiff's total provable damages she would be entitled to no further recovery from Dr. Maddatu. If the settlement exceeds the amount of her provable damages minus the damages caused by Dr. Maddatu, the amount of such excess should be credited against the damages assessed solely for the harm caused by Dr. Maddatu. If the settlement is less than the amount of her total provable damages minus the damages *483 caused solely by Dr. Maddatu, plaintiff should recover the full amount of damages assessed against Dr. Maddatu alone for the pain and suffering allegedly endured by her during the delay in treatment within the first 24 hours. See Ash v. Mortensen, 24 Cal.2d 654, 660, 150 P.2d 876, 879, and Traynor, J., concurring, 24 Cal.2d at 660-663, 150 P.2d at 879, 881 (Sup. Ct. 1944); Alexander v. Hammarsberg, 103 Cal. App.2d 872, 880, 230 P.2d 399, 405 (D. Ct. App. 1951); Selby v. Kuhns, 345 Mass. 600, 188 N.E.2d 861 (Sup. Jud. Ct. 1963); Derby v. Prewitt, 12 N.Y.2d 100, 236 N.Y.S.2d 953, 187 N.E.2d 556 (Ct. App. 1962); Cimino v. Alway, 18 Ariz. App. 271, 501 P.2d 447 (Ct. App. 1972); cf. Knutsen v. Brown, supra, where a judgment was obtained against the original tortfeasors in a contested trial and was satisfied before the malpractice action was instituted. We note that neither tortfeasor in this case has an interest in the claim plaintiff has asserted against the other except that, as here, where two parties commit successive independent torts, one may receive credit for part of the payment made earlier by the other tortfeasor "to avoid duplicating compensation to the plaintiff." Daily v. Somberg, supra, 28 N.J. at 381-386. We are not dealing with a case of joint tortfeasors, as in Theobald v. Angelos, 44 N.J. 228 (1965); see Derby v. Prewitt, supra.
Reversed and remanded for a new trial against Dr. Maddatu on liability and damages, if any, to be assessed in accordance with this opinion.