**CONVOY COMPANY, an Oregon corporation, Appellee,**

v.

**SPERRY RAND CORPORATION, a Delaware corporation, Appellant.**

**Nos. 80–3266, 80–3288.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 10, 1981.

Decided March 26, 1982.

Karen J. Kubin, San Francisco, Cal., argued, for appellant; Thomas A. Hartwell, Cooley, Godward, Castro, Huddleson & Tatum, San Francisco, Cal., on brief.

Bruce G. Berning, Tonkon, Topr & Galen, Portland, Or., for appellee.

Before WRIGHT and GOODWIN, Circuit Judges, and THOMPSON *, District Judge.

* The Honorable Bruce R. Thompson, Senior United States District Judge for the District of Nevada, sitting by designation.

GOODWIN, Circuit Judge.

This court remanded the initial judgment in favor of Convoy Company for a determination whether the judgment, when coupled with a prior settlement, resulted in a double recovery. *Convoy Corp. v. Sperry Rand Corp.*, 601 F.2d 385 (9th Cir. 1979). On remand the district court found that Convoy's total provable damages exceeded the total of the settlement and the judgment and entered judgment in the same amount previously entered.

On appeal Sperry Rand, (referred to as Univac) argues that the district court erred by including in the damages (a) prejudgment interest, (b) the cost of salaried supervisors, and (c) the total electronic data processing staff costs. Convoy cross-appeals, arguing that the interest on the judgment should be increased.

After reviewing the record, transcripts, and briefs we conclude (1) that Univac has failed to show that the district court erred as a matter of law; and (2) that any mistake as to the factual computation of damages is harmless because Convoy's total damages would still exceed the amount necessary to avoid a double recovery. It does appear, however, that the district court erred in failing to provide for the increase in legal interest adopted by Oregon in 1979.

In 1969 Convoy entered into a contract with a firm named WOFAC under which WOFAC agreed to design a computerized load makeup and rerouting system for use in Convoy's motor vehicle transport business. Convoy entered into a second contract with Univac under which Univac agreed to provide the computer hardware to be used with WOFAC's software and certain software support.

The system never functioned properly and Convoy withdrew from the project and sued WOFAC for $516,129.09 in out-of-pocket costs and for more than $1,000,000 in lost profits and punitive damages. Convoy

settled with WOFAC for $354,500. Convoy then sued Univac for $216,398.61 for out-of-pocket costs. The district court entered judgment for Convoy in the full amount of its claim and Univac appealed.[1]

On appeal this court affirmed in part, reversed in part, and remanded the case. Univac's major contention on appeal was that Convoy was not entitled to a double recovery. The court agreed, but noted that the question of a double recovery was complicated by the fact that (a) Convoy had sought damages for lost profits and punitive damages from WOFAC but not from Univac[2], and (b) the settlement with WOFAC had not allocated portions of the total amount to particular claims. The court rejected Univac's argument that the settlement with WOFAC should be applied to offset all of Convoy's claims against Univac. Rather, the judgment approved Convoy's reliance on *Ciluffo v. Middlesex General Hospital*, 146 N.J.Super. 476, 370 A.2d 57 (App.Div.1977), and concluded:

> "[W]e believe that the trial court should have applied the principles enunciated in *Ciluffo* to the facts of this case. Univac is liable to Convoy, but its liability is limited to the total provable damages to which Convoy is entitled from both successive, independent wrongdoers, minus the $354,500 received in the settlement from WOFAC.
>
> "The trial court did not find Convoy's total provable damages against the two defendants. It merely stated that the settlement received from WOFAC did not fully compensate Convoy for its out-of-pocket expenses. A remand is therefore necessary for additional factfinding."

601 F.2d at 389.

On remand the parties spent considerable court time arguing over the effect of their prior stipulations as to damages. The court found that Convoy's total damages exceeded $570,898.61 (the total of the WOFAC settlement and the prior judgment against

Univac), and therefore reentered judgment for Convoy and against Univac for $216,398.61 (the same amount previously awarded) with 6 percent interest from March 26, 1971. In his opinion, the trial judge found that (a) the parties were bound to the agreement in the initial pretrial order that electronics data processing staff costs for a stated period totaled $88,045.94; but that evidence of such costs for additional periods could be adduced; (b) Convoy was entitled to recover for the hours its salaried personnel spent supervising the computer system and for construction of a new building addition to house the computer operation; (c) Convoy was entitled under Oregon law to interest on the unliquidated damages from the date of the breach of contract to the date of the settlement with WOFAC; and (d) as the out-of-pocket expenses, coupled with interest exceeded $570,898.61, the court did not have to consider Convoy's third element of damages, loss of the benefit of the bargain.

The following issues remain for decision:

(1) Was the trial court's finding that Convoy suffered total provable damages in excess of $570,898.61 reversible error because:

(a) electronics data processing staff costs of $113,095.35 were neither pleaded nor proved by substantial evidence;

(b) salaried supervisory staff costs of $83,281.63 were not allowable as a matter of law, and

(c) interest was not an item of damages within this court's mandate, was on sums not readily ascertainable as to due date or amount, and resulted in an award of interest on interest?

(2) Should the rate of interest on the judgment increase, as Convoy claims, to 9 percent on July 25, 1979, pursuant to the change in the Oregon statutory rate of interest?

As the district court interpreted this court's prior opinion, the district court had

---

1. An expanded statement of these facts may be found in this court's opinion on the first appeal, *Convoy Corp. v. Sperry Rand Corp., supra,* 601 F.2d at 386–8.

2. The contract between Convoy and Univac precluded liability for such damages.

only to determine whether Convoy's total provable damages against WOFAC and Univac exceeded $570,898.61. If the damages exceeded that amount, Convoy was entitled to a judgment of $216,398.61. Convoy, on remand, did not seek recovery beyond that amount.

The district court held that total provable damages exceeded $570,898.61 because out-of-pocket expenses alone were $541,997.13, and that the interest on this amount exceeded $100,000. Having made these findings, the district court held that it need not consider whether Convoy was entitled to recover damages for the loss of benefit of the bargain.

Because the district court found that combination of the two items of out-of-pocket expenses and interest exceeded $570,898.61, a mistake in computing damages is harmless unless, either by itself or in combination with other errors, the error reduces the total to less than $570,898.61.

The propriety of awarding interest will be considered first because the district court found only $541,997.13 in expenses, exclusive of interest. Second, the propriety of including the cost of salaried personnel will be considered. The amount in issue, $83,000, might reduce the total below $570,000 even if interest was properly awarded. The issue of the amount of electronics data processing staff costs will be considered last because the difference between the amount awarded, $113,094.35, and the amount Univac concedes, $77,000, might be irrelevant if the other issues are decided in Convoy's favor.

(1) *Interest*

Univac argues that prejudgment interest was outside this court's mandate, citing *National Surety Corp. v. Charles Carter & Co.*, 621 F.2d 739 (5th Cir. 1980). That case involved a contest over funds withheld by a building contractor from its subcontractor. The Fifth Circuit said:

" '[S]ubject only to determination of priority between it and the government, National Surety [subrogee of the subcontractor] is entitled to recover the paid balance of $41,858.68.' " 621 F.2d at 740.

On retrial, the district court entered judgment for the surety but denied prejudgment interest. On the second appeal, the Fifth Circuit held that prejudgment interest was precluded because the court's opinion on remand was silent as to prejudgment interest.

Even if the Fifth Circuit's decision in *National Surety Corp.* were binding on this court, the case is factually distinguishable. The Fifth Circuit construed its opinion as an affirmation of a specific judgment subject to a single condition. In contrast, this court's initial opinion remanded the case for a determination of the amount of total damages. Furthermore, Convoy does not seek to recover a specific amount of prejudgment interest but only to demonstrate that with prejudgment interest the initial award of $216,398.61 did not amount to a double recovery. This court's remand to the district court does not preclude consideration of prejudgment interest as a component of damages.

Under Oregon law, interest on unliquidated damages for breach of contract is proper where the exact amount of damages is either ascertained or readily ascertainable and the time from which the interest runs is easily ascertained. *Public Market Co. of Portland v. City of Portland*, 171 Or. 522, 138 P.2d 916 (1943). Univac argues that under our interpretation of Oregon law in *Unitec Corp. v. Beatty Safeway Scaffold Co.*, 358 F.2d 470 (9th Cir. 1966), Convoy's damages are too uncertain in time and amount to allow the prejudgment interest. In *Unitec* this court disallowed prejudgment interest on a claim to recover the reasonable value of a scaffold company's services. Univac relies on the following language in *Unitec*:

"[It is] patently clear that prejudgment interest cannot be assessed in the case of a claim for reasonable value of services inasmuch as the value of the services cannot be ascertained by computation or by reference to well-known standards of value. Interest can only begin to accrue

in a case of this kind once the amount of the claim is established by the court." 358 F.2d at 475.

Univac concludes that "where there is active litigation over fundamental issues to be determined by the finder of fact, damages cannot be deemed to be liquidated." But Oregon law does not limit the allowance of prejudgment interest to liquidated amounts, only to those easily ascertainable as to time and amounts.

■ The trial court found that the amounts and dates of the expenditures on which Convoy claims interest were easily ascertainable. *Kreig v. Union Pacific Land Resource Corporation*, 269 Or. 221, 525 P.2d 48 (1974), makes it clear that litigation of the underlying facts does not render the damages uncertain.

There is substantial evidence to support the trial court's finding that the amounts and times were ascertainable. Univac has failed to establish, pursuant to this finding, that prejudgment interest was not allowable as a matter of Oregon law.

■ Univac also contends that an award of interest on the total of the out-of-pocket expenses would be an award of interest on interest. Convoy concedes that this would be true if a specific amount of prejudgment interest had been awarded. Here the interest was merely estimated to be around $100,000 and therefore sufficient to raise total expenses from $541,997.13 over the $570,891.61 necessary to sustain the judgment. Assuming that Univac's argument was accepted, it would not reduce the prejudgment interest by enough to reduce the total to less than the required amount.

### (2) *Salaried Personnel Costs*

■ The trial court awarded Convoy $83,281.63 for the cost of the hours its salaried personnel spent supervising the unsatisfactory computer system. The judge explained:

"In *Clements Auto Company v. Service Bureau Corp.*, 298 F.Supp. 115, 134 (D.Minn.1969), *aff'd in relevant part*, 444 F.2d 169 (8th Cir. 1971), a case with simi-

lar facts, the court permitted the plaintiff to recover for the hours its salaried personnel spent supervising a data processing system because 'their services were effectively lost ... during the time they supervised a system which was of little benefit to the company....' I find that the time spent by salaried employees of Convoy primarily resulted from problems created by the malfunctioning of the computer system and were properly chargeable as an item of damages."

Univac argues that as a matter of law supervisory staff costs cannot be recovered because the plaintiff would have paid the staff's salary in any event. Univac relies on *AES Technology Systems, Inc. v. Coherent Radiation*, 583 F.2d 933 (7th Cir. 1978), and *Wilson v. Marquette Electronics, Inc.*, 630 F.2d 575 (8th Cir. 1980). These cases, according to Univac, confirm the long-standing rule that plaintiff is not entitled to recover fixed expenses which do not increase by virtue of any wrongful conduct of the defendant.

The cases cited by Univac are distinguishable. The issue is not whether Convoy would have paid the supervisors' salaries if the defendant had not breached the contract, but whether the breach deprived Convoy of the services it paid for. In *AES Technology*, plaintiff sued defendant because the Laser defendant provided did not work at the warranted power output. The Eighth Circuit denied an award for staff salaries because "[p]roblems with the Laser did not prohibit AES employees from working on other projects nor did the problems delay work on the project itself." 583 F.2d at 942. Similarly in *Wilson*, the corporation was denied reimbursement for Dr. Wilson's time because the evidence, although showing that Dr. Wilson lost time from his private practice as a result of defendant's breach, was insufficient to show that the plaintiff corporation paid Dr. Wilson any extra amount or was denied the benefit of his services.

In *Clements Auto Supply*, the court found that the supervisors' services were effectively lost to plaintiff during the time

they supervised a system which was of little benefit to the company. In relying on *Clements Auto Supply*, the district court implicitly found that Convoy had lost the benefit of its supervisors' services for the time they spent supervising the computer system. The cases cited by Univac are not directly in point and in any event are not Oregon cases; accordingly, Univac has failed to show that the district court was wrong as a matter of law.

■ Univac next argues that even if salaries may be included in the computation of damages, the award here was based on incompetent evidence. The trial court held:

"Some of the time salaried personnel spent working on the computer were estimates by the employees themselves and were verified by the testimony of people familiar with their work and the amount of time spent on the computer project. They confirmed that the figures used by Convoy were accurate. I find that the evidence was adequate to sustain the amount requested."

Univac suggests that Convoy's proof is no better than testimony such as "if this machine hadn't broken down, I might have made a million dollars last year." It is true that Convoy's evidence was not based on business records. The evidence was, however, based on individual employees' estimates made under oath on how they spent their time. Univac does not suggest that the judge should not have considered Convoy's evidence. Univac offered no evidence to contradict the estimate. The estimate was not a guess of what might have happened, but a legitimate determination of how in fact the supervisors' time was allocated. Under the circumstances (the trial took place ten years after the event), there was sufficient evidence before the court to support its finding.

(3) *Electronic Data Processing Staff Costs*

The district court awarded Convoy $113,094.35 for electric data processing staff costs. This amount was reached by holding Univac to its stipulation in the initial pre-

trial order that Convoy incurred costs in the amount of $83,045.94 between March 20, 1970, and January 16, 1971, and adding $8,084.02 for pre-March 20 costs and $16,984.39 for post-January 16 costs. The trial court excused Convoy from offering proof of the amounts, explaining:

"Convoy was entitled to use the agreed fact figure contained in the pretrial order. In addition, at the earlier trial on the $516,129 out of pocket expenses then claimed by Convoy, Sperry Rand's trial attorney agreed 'that if witnesses were called, they would testify that there [was] a valid basis for each of the out of pocket expenses.' I therefore relieved Convoy of the necessity of submitting evidence of those expenses. I find that the stipulation, concessions, and the evidence of expenditures incurred both before and after as well as during the period covered by the stipulation amply support the claim of $113,094.35 in item 6."

Univac argues that the district court's ruling was fundamentally unfair because Univac proved at trial that Convoy's total costs for the entire period of time were only $76,710.94 and there is no factual support for the $88,049.94 figure. The amount of $113,094.35 was computed by extracting from the $76,710.94 those costs incurred before and after the period covered by the stipulation and adding those costs to the stipulation's $88,045.94.

Univac correctly describes Convoy's method for computing $113,094.35. Convoy argues this is acceptable because: (a) Univac was properly held to its pretrial stipulation; (b) there was sufficient evidence of the costs incurred before and after the period covered by the stipulation; and (3) the stipulation relieved Convoy of having to present evidence to support the $88,049.94 figure.

■ Convoy suggests that the initial issue is whether the court abused its discretion by holding Univac to its pretrial order stipulation. Univac argues that the generally applicable rules governing pretrial orders are irrelevant. This argument is not

persuasive. In light of the passage of time, the nature of the remand, and the general rule that parties are generally bound by pretrial orders unless they are modified, the trial court could reasonably hold Univac to the stipulated pretrial order.

■ The second question: If Univac is held to the $88,000, should Convoy be allowed to seek additional damages outside the period covered by the pretrial order. One possible conclusion is that although Convoy in fact may have incurred only $76,-710.94 in costs, Univac will not be heard to complain of a larger award when the award is based on Univac's own stipulation and concessions at the previous trial that the out-of-pocket expenses could be established by witnesses if called. Univac has no right to be relieved of a four-year-old stipulation merely because Convoy cannot now substantiate the amounts stipulated.

Even if we held that the finding of EDP staff costs in excess of the costs previously stipulated is unsupported, the difference would be only about $25,000. If the judgment of the district court was correct in all other respects, however, the error would be harmless, because total allowable damages would still exceed the required sum.

(4) *Interest Rate*

■ The trial court awarded Convoy prejudgment interest at a flat 6 percent from March 26, 1971. The judge explained:

"The earlier judgment provided for interest at 6 percent a year from March 26, 1971. Recently the Oregon statute on interest was amended to provide for 9 percent interest. Because of the uncertainty which may exist on the effective date of that change, I will adhere to the interest rate of the earlier judgment."

Convoy argues in its cross-appeal that the interest rate should have changed as of July 25, 1979.

The interest in this diversity case is controlled by state law. The legal rate of interest specified in O.R.S. 82.010 was raised from 6 percent to 9 percent by Ch. 794, Or.L.1979, which provided that the change would take effect immediately on its enactment. The act was approved by the governor on July 25, 1979. Accordingly, Convoy contends that the district court had no choice but to award interest at the rate of 6 percent from March 6, 1971, through July 25, 1979, and at the rate of 9 percent thereafter.

Univac's response is that a change in interest rate does not effect a judgment rendered prior to the change, *see, Delaney v. Georgia-Pacific*, 42 Or.App. 439, 601 P.2d 475 (1979), and argues that the date of the trial court's original judgment, May 5, 1977, is controlling because that judgment was never finally reversed or satisfied, citing *Brauer v. City of Portland*, 35 Or. 471, 479, 60 P. 378 (1900).

This argument is not persuasive. *Delaney, supra*, involved a final judgment entered prior to the change in interest rate. This court's remand vacated the initial judgment. On remand the amount to be awarded was reopened. Univac has not demonstrated that Oregon law requires that any effect be given to a vacated judgment. The district court did not address this issue, saying only that the effective date of the change was uncertain. We discern no such uncertainty and no reason to use the outmoded rate used in the first judgment when determining the rate of interest for the second. Most of the delay was engineered by Univac.

The prejudgment interest rate should be 9 percent as of July 25, 1979.

CONCLUSION

The judgment is modified to provide for interest at the rate of 9 percent from July 26, 1979, until the date of judgment. The judgment is affirmed in all other respects.