650 A.2d 336

JOSZEF KISS AND EDITH KISS, PLAINTIFFS–APPELLANTS, v. ZIV JACOB, DEFENDANT–RESPONDENT, AND ELIVIRA YAKOV, JOHN A. MAROLD, MARIANNE M. WARNEBOLD, CARLOS A. PALACIOS, NARENDRA N. PATEL AND JOSE AGABA, DEFENDANTS.

Argued October 25, 1994—Decided December 14, 1994.

*Michael A. Galpern* argued the cause for appellants (*Greitzer and Locks,* attorneys; *Mr. Galpern* and *James J. Pettit,* on the briefs).

*John G. Tinker, Jr.,* argued the cause for respondent (*Leary, Bride, Tinker & Moran,* attorneys).

The opinion of the Court was delivered by

CLIFFORD, J.

Plaintiffs' appeal challenges the Appellate Division's interpretation of the collateral-source statute, *N.J.S.A.* 2A:15–97. The court below held that the statute allows a court to reduce a plaintiff's verdict in a personal-injury case by the amount paid by a settling defendant that a jury later determines is not liable in any degree. 268 *N.J.Super.* 235, 633 *A.*2d 544 (1993). We granted certification, 137 *N.J.* 165, 644 *A.*2d 613 (1994), and now reverse.

I

On January 13, 1988, plaintiff Joszef Kiss was the owner and operator of an automobile that was involved in a chain-reaction collision on Route 18, East Brunswick. The Kiss vehicle was struck in the rear by a vehicle operated by defendant Ziv Jacob, behind which were automobiles of defendants Warnebold and Marold, also involved in the collision as were several vehicles ahead of the Kiss automobile. Kiss and his wife, plaintiff Edith Kiss, whose claim was for her *per quod* losses only, sued Jacob, Warnebold, Marold, and the drivers of three vehicles ahead of the Kiss automobile. Motions before trial resulted in summary judg-

ments in favor of Marold and the drivers ahead of Kiss, leaving only Jacob and Warnebold as defendants.

Immediately prior to trial plaintiffs settled with Warnebold for $100,000, the limits of that defendant's personal-injury-liability coverage. The trial court bifurcated the trial. At the liability phase the jury determined that Warnebold, the settling defendant, had been negligent but that her negligence had not proximately caused plaintiff Joszef Kiss's injuries. The jury found Jacob 100% at fault for the accident. At the damages trial the jury returned a verdict in Joszef Kiss's favor for $37,500 for lost earnings and $5,000 for his injuries. It awarded plaintiff Edith Kiss $2500 on her *per quod* claim. The total award therefore was $45,000.

On Jacob's application following trial, the court reduced Joszef Kiss's lost-earnings award to $11,500 by deducting from the $37,500 returned by the jury the sum of $26,000, representing the amount that Kiss's own automobile insurer had paid in personal-injury-protection (PIP) benefits for lost income. The court further ruled that because Warnebold, who had been found zero percent liable, was not a joint tortfeasor for purposes of the collateral-source statute, the $100,000 that plaintiffs had received in settlement with Warnebold should off-set Joszef Kiss's personal-injury award of $5000 and Edith Kiss's *per quod* recovery of $2500. The result was a reduction of Edith's verdict to zero and of Joszef's award to $11,500.

On appeal, plaintiffs challenged the trial court's application of the collateral-source statute, and defendant cross-appealed, contending that the statute required that plaintiffs' entire award be extinguished. The Appellate Division held that *N.J.S.A.* 2A:15–97 applied to settlements received from settling parties that a jury determines are not liable. 268 *N.J.Super.* at 250, 633 *A.*2d 544. The court below thus determined that Jacob, who by jury determination was 100% responsible for plaintiffs' injuries and damages, did not have to pay any damages whatsoever because Warnebold, whom the jury found to be not liable in any degree, had already

settled with plaintiffs for an amount that exceeded plaintiffs' total award.

## II

The Legislature's purpose in enacting *N.J.S.A.* 2A:15–97 was to do away with the common-law collateral-source rule. That rule permits a tort victim to retain collateral benefits—that is, benefits that do not come from a defendant—in addition to any amount that the victim might recover from that defendant. The effect of the rule is to deny a wrongdoer the benefit of any rights that the victim might have against other entities based on contract, employment, or some other relation. *Patusco v. Prince Macaroni, Inc.*, 50 *N.J.* 365, 368, 235 *A.2d* 465 (1967). The premise of the rule is that "[i]t should not concern the tortfeasor that someone else is obligated to aid his victim because of a duty assumed by contract or imposed by law," *ibid.*, and that "an injured party may recover fully from a tortfeasor for personal injuries notwithstanding that much of his loss was covered by contractual arrangements, such as for example an accident or life insurance policy." *Theobald v. Angelos*, 44 *N.J.* 228, 239, 208 *A.2d* 129 (1965).

In 1987 the Legislature enacted the following collateral-source rule:

> In any civil action brought for personal injury or death, except actions brought pursuant to the provisions of P.L. 1972, c. 70 (C. 39:6A–1 et seq.) [the No–Fault law], if a plaintiff receives or is entitled to receive *benefits* for the injuries allegedly incurred *from any other source other than a joint tortfeasor*, the benefits, other than workers' compensation benefits or the proceeds from a life insurance policy, shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award recovered by the plaintiff, less any premium paid to an insurer directly by the plaintiff or by any member of the plaintiff's family on behalf of the plaintiff for the policy period during which the benefits are payable. Any party to the action shall be permitted to introduce evidence regarding any of the matters described in this act.
>
> [*N.J.S.A.* 2A:15–97 (emphasis added).]

The question before us is whether, as the Appellate Division held, "benefits" as used in the statute include the proceeds of a plaintiff's settlement with a defendant later found to bear no

liability. We think not. Although the arguments of the parties and the Appellate Division's comprehensive treatment of the issue rest on long-standing principles of statutory construction and refer to the Legislature's treatment of "other than a joint tortfeasor" in other enactments, and to New York's treatment of its collateral-source rule, and to public-policy considerations, 268 *N.J.Super.* at 246–50 & n. 5, 633 *A.*2d 544, we believe that the legislative history, the language of the statute, and the desirability of coordinating the collateral-source statute with the Comparative Negligence Act, *N.J.S.A.* 2A:15–5.1 to –5.8, overcome the force of any contrary arguments.

We start by recalling that traditionally the types of benefits contemplated by the common-law collateral-source rule include those from life- or health-insurance policies, from employment contracts, from statutes such as worker's compensation acts and the Federal Employers' Liability Act, from gratuities, from social legislation such as social security and welfare, and from pensions under special retirement acts. *Restatement (Second) of Torts* § 920A comment c (1979). That those are the types of "benefits" on which the Legislature focused in *N.J.S.A.* 2A:15–97, in an effort to control spiralling automobile-insurance costs, is apparent from the statement of the Assembly Insurance Committee to the Senate bill that produced the statute:

> This bill is intended to prohibit duplicate recovery by plaintiffs. Thus, if a plaintiff received disability benefits, health insurance benefits, unemployment compensation, or other benefits after having established an injury, the benefits would be required to be deducted from the award. * * * To the extent that the injured party is being compensated for the same things from different sources there is double recovery on the part of the plaintiff. This bill, by requiring that the benefits received from the other sources be offset against the award, is intended to effect cost containment.
>
> [*Statement to Senate Bill No. 2708* (Nov. 23, 1987).]

The foregoing language suggests strongly that the Legislature's essential concern was with insurance-type benefits. The statute provides that when an award is reduced by the amount of benefits that a plaintiff has received, that reduction should be offset by "any premium paid to an insurer directly by the plaintiff, or by

any member of the plaintiff's family on behalf of the plaintiff for the policy period for which benefits are payable"—terminology that is utterly foreign to tort settlements.

In addition, *N.J.S.A.* 2A:15–97 addresses only those benefits that "duplicate[ ] any benefit contained in the award." Settlements of personal-injury claims are conventionally in the form of lump-sum payments that are designed to ensure the settling party's peace from prosecution ever after of the plaintiff's claim, without reference to any break-down of that claim into discrete elements of medical expense, lost income, pain and suffering, permanent disability, and the like. The non-specific nature of a settlement amount renders unreliable any conclusion that the Legislature intended to include "settlements" in the meaning of the term "benefits" as used in the collateral-source statute.

Apart from the above, however, and of surpassing importance to our determination is the effect of the Appellate Division's decision on one of the basic principles of comparative negligence, namely, that "responsibility for a plaintiff's claimed injury is to be apportioned according to each party's relative degree of fault." *Blazovic v. Andrich,* 124 *N.J.* 90, 107, 590 *A.*2d 222 (1991).

When an alleged tortfeasor settles before trial, comparative-negligence rules would dictate the allocation of relative responsibility of the remaining defendants. Under *N.J.S.A.* 2A:15–5.2, the trier of fact would determine not only the full value of the personal-injury plaintiff's damages but also the extent, in the form of a percentage, of each party's causative negligence. Therefore, when a settling defendant is in the picture, the factfinder must assess the negligence of that defendant as well as of the non-settling defendant. "When one defendant settles, the remaining codefendant or codefendants are chargeable with the total verdict less that attributable to the settling defendant's percentage share." *Cartel Capital Corp. v. Fireco of New Jersey,* 81 *N.J.* 548, 569, 410 *A.*2d 674 (1980). The court in *Rogers v. Spady,* 147 *N.J.Super.* 274, 278, 371 *A.*2d 285 (App.Div.1977), explained that

[t]he result of the Comparative Negligence Law is that if plaintiff makes a particularly good bargain in settlement and the ultimate percentage of negligence found attributable to the settling defendant would have resulted in a judgment for less than the amount of settlement, plaintiff will benefit by the excess amount. * * * However, this is offset by the potential for a greater loss to plaintiff if he makes a low settlement.

Application of the principles of comparative negligence to this case reveals the awkward effect of the Appellate Division's holding. Had defendant Jacob been found ninety-nine percent liable and Warnebold one percent liable, Jacob would have been liable for $18,364.50 (99% of $45,000 minus the PIP benefits received). Only the value of Warnebold's one percent liability, or $185.50, would have been deducted from the total verdict. However, under the Appellate Division's interpretation of the collateral-source statute, when Jacob's liability rises to 100%, he owes nothing because the total amount of settlement received from Warnebold must be deducted from the verdict. That a 100% liable defendant can end up paying nothing violates comparative negligence's basic tenet that "[e]ach tortfeasor is liable for the same percentage of negligence found attributable to him." *Rogers, supra,* 147 *N.J.Super.* at 277, 371 *A.*2d 285. We cannot believe that by enacting the collateral-source statute, the Legislature intended to produce such an avulsive change in our law.

The traditional rules of comparative negligence, as applied to this case, would call for defendant's payment of $19,000: 100% of the jury verdicts, $45,000, minus the amount of PIP benefits, $26,000, already paid to plaintiff Joszef Kiss. We do not find offense to *N.J.S.A.* 2A:15–97 in that result.

### III

Judgment reversed. The cause is remanded to the Law Division for entry there of judgment in accordance with this opinion.

*For reversal and remandment* —Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.