75 A.3d 1274

CALREATHER GRAHAM, AND WILLIE E. GRAHAM, HER HUSBAND, INDIVIDUALLY, AND WILLIE E. GRAHAM FOR CALREATHER GRAHAM WITH A P.O.A., PLAINTIFFS, v. GEORGE TWEDELL, MD; WOMEN'S HEALTH CARE OF WARREN; THANGA–MONI SEENIVASAN, MD; RARITAN VALLEY SURGICAL ASSOCIATES, PA; SOMERSET MEDICAL CENTER; NEHAL MEHTA, MD; RESPA CARE; DR. ABRAHAM SIMON; ANESTHESIA CONSULTANTS OF NEW JERSEY; DR. SADIA AHMED; ADVANCE HOSPITAL CARE AT SOMERSET MEDICAL CENTER, DEFENDANTS.

Superior Court of New Jersey
Law Division Middlesex County

Decided June 5, 2013.

*Richard Galex* and *Matthew A. Schiappa* for plaintiffs (*Lomurro, Davision, Eastman & Munoz, PA,* attorneys).

*David C. Donohue* for defendant Dr. Nehal Mehta (*Farkas & Donohue, LLC,* attorneys).

REA, J.S.C.

The issue presented in this medical negligence case is whether the sole defendant at trial, Dr. Nehal Mehta, would be entitled to a credit against any verdict returned against him in an amount equivalent to the aggregate for which the other named defendants settled prior to the commencement of trial.

Plaintiff Calreather Graham has been in a vegetative state since January 2, 2008. On that date, she underwent surgery to correct certain complications related to two prior surgeries which took place on December 4, 2007, and December 6, 2007, respectively. These surgeries all took place at Somerset Medical Center. On the afternoon of January 2, 2008, within an hour or two after coming out of surgery, defendant, the attending critical care/pulmonologist physician allegedly ordered and/or allowed the administration of a 5mg dose of Lopressor (i.e. Metoprolol), which is a beta blocker designed to reduce an abnormally fast heart rate, a condition known as tachycardia. The administration of the Lopressor to plaintiff occurred at 6:00 pm, via intravenous push. Shortly after 6:30 pm, a code blue was called as plaintiff had gone into cardiac arrest. During the time between the administration of the Lopressor and the subsequent cardiac arrest, plaintiff's heart rate steadily declined.

The theory of plaintiff's case is that the Lopressor should not have been given at the time it was and that it caused plaintiff's heart rate to drop too low to the point that she went into cardiac arrest. Plaintiff's expert, Dr. Daniel Brodie, also a pulmonologist and critical care physician, testified that plaintiff's elevated heart rate at 6:00 pm on January 2, 2008, was natural and compensatory and should not have been treated at that time with a beta blocker such as Lopressor. Plaintiff was revived by a code blue team, however, not before she suffered irreversible anoxic encephalopathy.

Because of the oxygen deprivation to her brain, plaintiff has been in a vegetative state ever since January 2, 2008. For the last five plus years, she has been living at home under the most excellent care of her husband, Willie Graham. Her condition has not and will not improve.

Originally, plaintiff sued two additional doctors, the hospital, and the nurse who administered the Lopressor. However, all of those defendants settled with the plaintiff immediately prior to trial in the aggregate sum of $2,725,000. Defendant is taking the position that he will be entitled to a credit of $2,725,000 in the event a verdict is returned against him in an amount greater than that figure. In support of his position, defendant relies upon *Clark v. University Hospital–UMDNJ*, 390 *N.J.Super.* 108, 914 *A.*2d 838 (App.Div.2006), *Mitchell v. Charles P. Procini, D.D.S., P.A.*, 331 *N.J.Super.* 445, 752 *A.*2d 349 (App.Div.2000), and *Ciluffo v. Middlesex General Hospital*, 146 *N.J.Super.* 476, 370 *A.*2d 57 (App.Div.1977). Plaintiff contends that the aggregate settlement amount negotiated between plaintiff and the other defendants will have no effect on any verdict against defendant. In this regard, plaintiff relies upon *Johnson v. American Homestead Mortgage Corporation*, 306 *N.J.Super.* 429, 703 *A.*2d 984 (App.Div.1997) and *Rogers v. Spady*, 147 *N.J.Super.* 274, 371 *A.*2d 285 (App.Div.1977).

Defendant advances the notion that the *Johnson* decision is at odds with *Ciluffo* and *Clark*. Indeed, according to defense counsel, those who practice in the medical malpractice arena take note

of this inconsistency and reconcile it as an exception in the law that is unique to medical malpractice cases.

In cases involving successive independent tortfeasors, the physician may receive a credit for the payment made by the earliest tortfeasor to eliminate duplicate compensation to the plaintiff. This formula is contrary to the formula utilized in non-medical malpractice cases involving the allocation of damages sustained due to the negligence of multiple tortfeasors. In all other cases, plaintiff receives a windfall if a settling defendant pays more than his or her pro rata share. The medical malpractice cases do not adequately explain why victims of malpractice are required to utilize a less favorable formula than any other type of plaintiff.

[Abbott A. Brown, *New Jersey Medical Malpractice Law* 288–289 (Richard E. Brennan, 5th ed. 2013).]

This court does not concur that *Johnson* is inconsistent with *Ciluffo* and *Clark*. In both *Ciluffo, supra,* 146 *N.J.Super.* at 482–83, 370 *A.*2d 57 and *Clark, supra,* 390 *N.J.Super.* at 119–20, 914 *A.*2d 838, the jury considered and rendered a verdict as to the missing co-defendant that settled prior to trial. The same was not so in *Johnson* and is not so in this case.

In order for a defendant to be entitled to a credit, the jury's verdict must provide sufficient information to discern the liability of the settling co-defendant or antecedent tortfeasor. In this regard, the jury could provide a total damage figure and a damage figure for the health care provider. *See Ciluffo, supra,* 146 *N.J.Super.* at 482–83, 370 *A.*2d 57. Alternatively, a jury could determine damages due from the settling co-defendant (or antecedent tortfeasor) and damages due from the health care provider who went to trial. *See Clark, supra,* 390 *N.J.Super.* at 120, 914 *A.*2d 838. In either scenario, a jury must have evidence pertaining to the tort committed by the settling co-defendants. Without this evidence, it is not possible for a jury to determine total damages because they are obviously missing a major component of same. This is why defendant's reliance on *Mitchell* is misplaced. As explained in *Mitchell, supra,* 331 *N.J.Super.* at 457–58, 752 *A.*2d 349:

Without a jury determination of full damages, it is impossible to determine to what extent, if any, the settlement with the Cherry Hill defendants took into consideration plaintiff's contributory fault. We, therefore, conclude that plaintiff is entitled

to have a jury determine the issue of full compensation, as well as that amount attributed to defendant's alleged malpractice.

In this case, as in Johnson, no evidence was presented during trial alleging any negligence by the settling co-defendants. Simply put, defendant chose not to put on a case against his co-defendants. As such, the rationale of *Johnson* applies, and as stated therein:

> In view of the inapplicability of the collateral source statute, the question then remains as to how those settlement proceeds are to be treated *vis-à-vis* the adjudicated tortfeasors. The answer, we think, is plain and well settled by the case law construing the respective obligations of tortfeasors, both alleged and adjudicated, under the Comparative Negligence Act, *N.J.S.A.* 2A:15–5.1 to 5.8. In sum, as first articulated by *Rogers v. Spady,* 147 *N.J.Super.* 274, 277 [371 *A.2d* 285] (App.Div.1977), the effect of the Comparative Negligence Law was to replace the former *pro rata* liability of joint tortfeasors under the Joint Tortfeasors Contribution Law, former *N.J.S.A.* 2A:53A–1, with the obligation of each tortfeasor to pay damages in accordance with its own adjudicated percentage of fault. A necessary corollary of this scheme is to deny to comparative-negligence joint tortfeasors a reduction of their liability based on a plaintiff's pretrial settlement with a defendant who is never found to be liable at all. Thus, under the comparative-negligence scheme a plaintiff is entitled to retain the proceeds of the pretrial settlement as well as the full jury verdict as allocated among all other defendants. In this respect, as *Rogers* pointed out, the comparative-negligence scheme differs from the former Joint Tortfeasors Contribution Law, as construed by *Theobald v. Angelos,* 44 *N.J.* 228 [208 *A.2d* 129] (1965), under which the non-settling defendants were entitled to a *pro tanto* credit for the proceeds of the settlement made by plaintiff with the settling defendant whose liability was never adjudicated.
>
> The rationale of *Rogers v. Spady, supra,* has been consistently reaffirmed and adhered to. *See, e.g., Young v. Latta,* 123 *N.J.* 584, 592 [589 *A.2d* 1020] (1991); *Kiss v. Jacob,* [138 *N.J.* 278, 283–84, 650 *A.2d* 336 (1994) ]; *Granduke v. Lembesis,* 256 *N.J.Super.* 546, 552 [607 *A.2d* 988] (App.Div.1992). Thus, unless the settling defendant's percentage of liability is adjudicated at trial, there is simply no right in the adjudicated tortfeasors to a reduction of their own separately-allocated responsibility for the verdict. We are aware that the percentage of fault of a settling defendant is subject to allocation at trial, but only if the settling defendant's liability is a trial issue either as the result of a cross-claim or because it is tried on notice to plaintiff. *See Young v. Latta, supra; R.* 4:7–5(c), as amended effective, September 1, 1992. Here, the cross-claim was expressly withdrawn, AHMC's liability was not a trial issue and, therefore, no allocation of negligence was made against it. In these circumstances, each of the non-settling defendants was liable for his full allocated percentage of plaintiff's damages without receiving credit for the settlement.

[*Johnson, supra,* 306 *N.J.Super.* at 436–37, 703 *A.2d* 984].

According to defendant's logic, in order for him to be entitled to a credit of $2,725,000, the jury would necessarily have to return a verdict of no cause of action against the settling co-defendants. That obviously cannot and will not happen in this case simply because the settling co-defendants will not be adjudicated tortfeasors.

Therefore, because there will be no adjudication as to the settling co-defendants, defendant will be the only defendant for which the jury will determine liability.  In the event a verdict is returned against defendant, he will not be entitled to any apportionment or *pro tanto* credit *vis-à-vis* the pre-trial settlement of his co-defendants.  Likewise, in accord with this ruling, no settling co-defendant charge shall be given to the jury.