SYLLABUS

This syllabus is not part of the Court's opinion.  It has been prepared by the Office of the Clerk for the convenience of the reader.  It has been neither reviewed nor approved by the Court.  In the interest of brevity, portions of an opinion may not have been summarized.

**Todd B. Glassman v. Steven P. Friedel** (A-48/49/50/51-20) (085273)

**Argued October 1, 2021 -- Decided December 23, 2021**

**PATTERSON, J., writing for a unanimous Court.**

In this appeal, the Court addresses the allocation of damages in cases in which a plaintiff asserts claims against successive tortfeasors and settles with the initial tortfeasors before trial.

In March 2017, Jennifer Collum-Glassman, a forty-five-year-old teacher, tripped and fell as she was leaving a restaurant owned and operated by Juanito's, Inc., and KLE Properties, LLC (collectively, the Property Defendants).  Collum-Glassman fractured her left ankle and was hospitalized at Hackensack Meridian Health d/b/a Riverview Medical Center and treated by seven medical professionals (collectively, the Medical Defendants).

Three weeks after a surgery on her ankle, Collum-Glassman suffered a pulmonary embolism and died.  According to plaintiff's answers to interrogatories, an autopsy revealed that the cause of death was "[s]addle pulmonary embolism due to immobilization following fractures of left ankle due to fall."

In June 2018, plaintiff Todd B. Glassman, as Executor of the Estate of Collum-Glassman, his wife, filed a wrongful death and survival action against the Property Defendants.  In discovery, plaintiff's counsel served the expert report of a forensic economist on counsel for the Property Defendants.  The expert opined that as a result of Collum-Glassman's death, plaintiff suffered economic loss in the amount of over $2.3 million, consisting of lost earnings, health coverage, pension benefits, and services.  In an amended complaint, plaintiff added claims against the Medical Defendants.

In September 2019, counsel for plaintiff and counsel for the Property Defendants filed a stipulation of dismissal, stating that plaintiff had settled his claims against those defendants.  The amount of the settlement was $1.15 million.

The Medical Defendants then moved before the trial court for an order "to establish the principles espoused in [Ciluffo v. Middlesex General Hospital, 146 N.J. Super. 476 (App. Div. 1977)], regarding successor liability."

1

The court granted each defendant's application, stating that "the principles set forth in [Ciluffo] shall apply to this case." It ordered that the Medical Defendants would receive a pro tanto credit based on the amount plaintiff received in his settlement.

The Appellate Division reversed, rejecting the application of the Ciluffo pro tanto credit to successive-tortfeasor cases in light of the Legislature's enactment of the Comparative Negligence Act, N.J.S.A. 2A:15-5.1 to -5.8. Glassman v. Friedel, 465 N.J. Super. 436, 445-46 (App. Div. 2020). The Appellate Division ordered that the trial court charge the jury to apportion the damages between the two successive causative events on which plaintiff premised his claims, Collum-Glassman's initial accident and the alleged medical malpractice. See id. at 446-69.

The Court granted the Medical Defendants leave to appeal. 245 N.J. 469 (2021).

**HELD:** The Court agrees with the Appellate Division that the Ciluffo pro tanto credit does not further the legislative intent expressed in the Comparative Negligence Act and does not reflect developments in case law over the past four decades. In its stead, the Court sets forth a procedure to apportion any damages assessed in the trial of this case and future successive-tortfeasor cases in which the plaintiff settles with the initial tortfeasors prior to trial.

1. At common law, the plaintiff could place the entire burden of fault on one defendant, who was then helpless to shift any of the responsibility to any other joint defendants. In 1952, responding to that injustice, the Legislature enacted the first of two statutes that now comprise New Jersey's allocation-of-fault statutory scheme, the Joint Tortfeasors Contribution Law (JTCL), N.J.S.A. 2A:53A-1 to -5. Under that statute, a defendant who paid the injured person more than that defendant's pro rata share of a judgment -- the total judgment divided by the total number of defendants -- was entitled to recover the excess from the remaining tortfeasors. And under case law applying the JTCL, a settlement with a joint tortfeasor was held to reduce the plaintiff's total claim against the non-settling codefendant(s) by the pro rata share, regardless of the actual amount of the settlement, and to bar contribution from the settling tortfeasor. (pp. 13-16)

2. When it enacted the Comparative Negligence Act (CNA) in 1972, the Legislature fundamentally altered the method by which courts determine the impact of the plaintiff's settlement with one joint tortfeasor on the liability of the remaining non-settling tortfeasors. The Act's key reform ameliorated the harsh consequences of the doctrine of contributory negligence, which had barred any recovery under the common law. The Legislature also prescribed a procedure by which the factfinder assesses each joint tortfeasor's percentage of fault and the court molds the judgment in accordance with that assessment. See N.J.S.A. 2A:15-5.2. The Legislature incorporated the right of contribution prescribed by the JTCL into the CNA's fault-based allocation scheme. See N.J.S.A. 2A:15-5.3(e). When the CNA and JTCL are applied in tandem, the percentage

2

of a total judgment assessed against a joint tortfeasor is determined not by pro rata allocation of damages, but by the factfinder's determination of the fault of each tortfeasor and, in cases involving contributory negligence, the fault of the plaintiff. (pp. 16-18)

3. In applying those laws, the Court has held that a non-settling defendant who provides "fair and timely notice" of intent to seek an allocation of fault to a settling defendant at trial, and then proves the settling defendant's fault, is entitled to such an allocation, even without a crossclaim against the settling defendant. Young v. Latta, 123 N.J. 584, 596-97 (1991). Thus, the plaintiff's settlement with one joint tortfeasor may afford a credit to non-settling tortfeasors against the plaintiff's recovery. That credit, however, is not a pro rata credit based on the number of defendants remaining in the case. Nor is it a pro tanto credit premised on the amount paid by the settling defendant to the plaintiff. The credit, instead, is based on the factfinder's allocation of fault to the settling defendant at trial, with the non-settling defendant bearing the burden of proving the settling defendant's fault. Indeed, unless the non-settling joint tortfeasor provides fair and timely notice and proves the settling defendant's fault at trial, the settlement has no effect on the damages imposed on the non-settling parties. Depending on the terms of the settlement and the outcome of the trial, the allocation-of-fault procedure may provide a strategic advantage to either the plaintiff or the non-settling joint tortfeasors. (pp. 18-24)

4. In Ciluffo, the Appellate Division did not rely on the JTCL or CNA as controlling authority in the successive-tortfeasor case before it. 146 N.J. Super. at 483. Instead, the court invoked pre-CNA decisions to reason that an initial tortfeasor "is potentially liable for all the natural and proximate injuries that flow from the initial tort." Id. at 482. The court thus directed trial courts to assess the "injuries caused by the successive independent tortfeasor" and compare them "with the damages recoverable for all of [the plaintiff's] injuries," so the plaintiff would not obtain a double recovery. Id. at 482-83. (pp. 24-27)

5. In Campione v. Soden, the Court considered the allocation of damages to successive tortfeasors and inferred from the CNA "that the legislative objective would be achieved by requiring juries to apportion damages between the successive accidents and to apportion fault among the parties responsible for each accident." 150 N.J. 163, 184 (1997). In its reasoning, the Court proposed a two-step analysis in successive-tortfeasor cases tried before a jury in which the plaintiff does not settle with any defendant prior to trial. Id. at 184-85. The Court explains Campione's approach and notes it resembles the approach adopted in section 26 of the Third Restatement of Torts. (pp. 28-31)

6. The Court explains in detail why it agrees with the Appellate Division that that the pro tanto credit for non-settling defendants in successive-tortfeasor cases is incompatible with New Jersey's statutory allocation-of-fault scheme and case law as it has developed since Ciluffo was decided. The Court overrules Ciluffo. (pp. 31-34)

3

7.  New Jersey's comparative-fault statutory scheme, <u>Campione</u>, and section 26 of the Third Restatement of Torts suggest an equitable method of apportioning damages in successive tortfeasor cases in which the plaintiff has alleged that multiple causative events caused the harm and has settled with the initial tortfeasor prior to trial.

- The initial stage of the procedure is the jury's apportionment of damages to each causative event, if the damages are divisible and thus can be apportioned.

  o  In the first step of that apportionment process, the non-settling defendant alleged to be responsible for the second causative event may present proof of the damages suffered by plaintiff as a result of the first causative event. A plaintiff who previously asserted in pleadings or discovery that the initial tortfeasor was negligent may not take the opposite position at trial, but plaintiff may urge the jury to apportion only a minor component of the damages -- or none at all -- to the first causative event.

  o  Next, the trial court should instruct the jury to quantify the damages resulting from the first causative event. The Court explains in detail how to prevent a double recovery, why the amount of the settlement should not be disclosed, and other important aspects of this step.

  o  The trial court should also instruct the jury to determine the amount of damages that resulted from the second causative event, which would constitute the total damages awarded to plaintiff in the judgment to be entered by the trial court.

- In the second stage of the apportionment process, the trial court should instruct the jury to apportion fault among the non-settling defendants as joint tortfeasors, in accordance with N.J.S.A. 2A:15-5.2(a), with the percentages adding up to one hundred percent. The court would then mold the total judgment -- the amount of damages attributed by the jury to the medical malpractice -- in accordance with the percentage of fault allocated to each defendant. N.J.S.A. 2A:15-5.2(d).

The Court provides detailed guidance as to the entire two-step apportionment process it sets forth and agrees with the Appellate Division that the process "is fair and wholly consonant with the developments in our law since <u>Ciluffo</u>." <u>Glassman</u>, 465 N.J. Super. at 469. (pp. 34-38)

**AFFIRMED AS MODIFIED.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in JUSTICE PATTERSON's opinion.**

4

# SUPREME COURT OF NEW JERSEY
## A-48/49/50/51 September Term 2020
## 085273

Todd B. Glassman, as
Executor of the Estate of
Jennifer K. Collum-
Glassman, deceased,

Plaintiff-Respondent,

v.

Steven P. Friedel, M.D.,
Charles W. Farrell, M.D.,
Lon Weiner, M.D., Natacha
Field, R.N., Tanya Gooden, R.N.,
Constance MacKay, R.N.,
Anuradha Thalasila, M.D., and
Hackensack Meridian Health
d/b/a Riverview Medical Center,

Defendants-Appellants,

and

Juanito's Inc. and KLE
Properties, LLC,

Defendants.

On appeal from the Superior Court,
Appellate Division, whose opinion is reported at
465 N.J. Super. 436 (App. Div. 2020).

| Argued | Decided |
|---|---|
| October 1, 2021 | December 23, 2021 |

1

John M. Hockin, Jr. argued the cause for appellants Natacha Field, R.N., Tanya Gooden, R.N., and Hackensack Meridian Health d/b/a Riverview Medical Center (Ronan, Tuzzio & Giannone, attorneys; Anthony M. Tracy, of counsel and on the brief).

Michael R. Ricciardulli argued the cause for appellant Anuradha Thalasila, M.D. (Ruprecht Hart Ricciardulli & Sherman, attorneys; Michael R. Ricciardulli, of counsel and on the brief, and Louis A. Ruprecht, on the brief).

Herbert Kruttschnitt, III argued the cause for appellant Constance MacKay, R.N. (Dughi, Hewit & Domalewski, attorneys; Herbert Kruttschnitt, III, of counsel, and Ryan A. Notarangelo, on the brief).

Michael G. Halpin argued the cause for appellant Charles W. Farrell, M.D. (Grossman, Heavey & Halpin, attorneys; Michael G. Halpin, of counsel and on the brief).

Christina Vassiliou Harvey argued the cause for respondent (Lomurro, Munson, Comer, Brown & Schottland; attorneys; Christina Vassiliou Harvey, of counsel and on the brief, Jonathan H. Lomurro, of counsel, and Alan J. Weinberg, on the brief).

JUSTICE PATTERSON delivered the opinion of the Court.

In this appeal, we address the allocation of damages in cases in which a plaintiff asserts claims against successive tortfeasors and settles with the initial tortfeasors before trial.

2

Plaintiff Todd B. Glassman, as Executor of the Estate of Jennifer K. Collum-Glassman, his wife, filed a wrongful death and survival action against the owners of a restaurant where Collum-Glassman fractured her ankle. He alleged that the property owners' negligence caused Collum-Glassman's accident, which in turn caused her pulmonary embolism and death a month later. Plaintiff also asserted wrongful death and survival claims against physicians and nurses who treated Collum-Glassman for her ankle injury and the hospital that employed them, contending that Collum-Glassman's pulmonary embolism and death resulted from medical malpractice. Plaintiff thus claimed that Collum-Glassman's injuries and death resulted from two independent events that occurred at different times and were caused by distinct groups of tortfeasors.

After plaintiff settled his claims against the property owners, the trial court granted the non-settling medical malpractice defendants' pretrial motion for a pro tanto credit[1] based on the amount plaintiff received in his settlement, pursuant to the Appellate Division's opinion in Ciluffo v. Middlesex General Hospital, 146 N.J. Super. 476, 481-83 (App. Div. 1977).

---

[1] The term "pro tanto" denotes "[t]o that extent; for so much." Black's Law Dictionary 1478 (11th ed. 2019). In the setting of this case, a "pro tanto credit" is "a credit in the amount of the settlement with the settling tortfeasor." Restatement (Third) of Torts: Apportionment of Liability § 16 cmt. c (Am. Law Inst. 2000).

3

The Appellate Division granted plaintiff's motion for leave to file an interlocutory appeal, and reversed the trial court's determination. Glassman v. Friedel, 465 N.J. Super. 436, 445-46 (App. Div. 2020). In its opinion, the Appellate Division rejected the application of the Ciluffo pro tanto credit to successive-tortfeasor cases in light of the Legislature's enactment of the Comparative Negligence Act, N.J.S.A. 2A:15-5.1 to -5.8. The Appellate Division ordered that the trial court charge the jury to apportion the damages between the two successive causative events on which plaintiff premised his claims, Collum-Glassman's initial accident and the alleged medical malpractice. See id. at 446-69.

We granted leave to appeal, and we now modify and affirm the Appellate Division's decision. We agree with the Appellate Division that the Ciluffo pro tanto credit does not further the legislative intent expressed in the Comparative Negligence Act and does not reflect developments in our case law over the past four decades. In its stead, we set forth a procedure to apportion any damages assessed in the trial of this case and future successive-tortfeasor cases in which the plaintiff settles with the initial tortfeasors prior to trial.

4

I.

A.

On March 25, 2017, Collum-Glassman, a forty-five-year-old special education teacher, visited Juanito's, a Red Bank restaurant, to buy take-out food for her family. According to plaintiff, Juanito's was owned and operated by defendants Juanito's, Inc., and KLE Properties, LLC (collectively, the Property Defendants).

As Collum-Glassman left the restaurant, she tripped and fell in the doorway, sustaining a comminuted trimalleolar fracture of her left ankle. She was hospitalized at Hackensack Meridian Health d/b/a Riverview Medical Center (Riverview) and treated by seven medical professionals affiliated with Riverview: Steven P. Friedel, M.D.; Lon Weiner, M.D.; Charles W. Farrell, M.D.; Anuradha Thalasila, M.D.; Natacha Field, R.N.; Tanya Gooden, R.N.; and Constance MacKay, R.N. (collectively, the Medical Defendants).

On March 30, 2017, defendants Weiner and Friedel conducted an open reduction internal fixation of Collum-Glassman's left ankle. On April 19, 2017, three weeks after the surgery, Riverview discharged Collum-Glassman.

On April 26, 2017, Collum-Glassman suffered a pulmonary embolism and died. According to plaintiff's answers to interrogatories, an autopsy

revealed that the cause of death was "[s]addle pulmonary embolism due to immobilization following fractures of left ankle due to fall."

B.

1.

On June 28, 2018, plaintiff filed a wrongful death and survival action against the Property Defendants. Plaintiff alleged that the Property Defendants "did own, control, inspect, maintain, clean and repair" Juanito's on the date of Collum-Glassman's accident, that they "did carelessly and negligently control, inspect and maintain the aforesaid premises," and that, as a result of the defendants' negligence, Collum-Glassman "suffered severe injuries ultimately leading to her death."

In discovery, plaintiff's counsel served the expert report of a forensic economist on counsel for the Property Defendants. The expert opined that as a result of Collum-Glassman's death, plaintiff suffered economic loss in the amount of $2,349,278, consisting of lost earnings, health coverage, pension benefits, and services.

In an amended complaint, plaintiff reiterated his wrongful death and survival claims against the Property Defendants. He also asserted wrongful death and survival claims against defendants Riverview, Friedel, Weiner, Farrell, Field, Gooden, and McKay, alleging that each defendant negligently

violated and deviated from the standard of care and was otherwise negligent and careless in treating Collum-Glassman. Plaintiff alleged that Collum-Glassman suffered an injury to her right leg during surgery performed on her left ankle, and that she "sustained severe, painful bodily injuries, which necessitated her obtaining additional medical treatment, caused her great pain and suffering and incapacitated her until her death." In a second amended complaint, plaintiff asserted similar claims against defendant Thalasila.

In their answers, the Medical Defendants asserted affirmative defenses based on comparative negligence and crossclaims for contribution and indemnification against the other defendants. Each defendant provided notice of intent to seek an allocation of fault pursuant to Rule 4:7-5(c) against any settling defendant in the event that the plaintiff settled his claims against one or more defendants prior to trial.

2.

On September 11, 2019, counsel for plaintiff and counsel for the Property Defendants filed a stipulation of dismissal, stating that plaintiff had settled his claims against those defendants. In an application seeking an apportionment hearing and the appointment of a law guardian for plaintiff's minor child, plaintiff's counsel disclosed that KLE Properties had agreed to

7

pay $1,150,000 to plaintiff in settlement of plaintiff's claims against the Property Defendants.

The Medical Defendants then moved before the trial court for an order "to establish the principles espoused in Ciluffo regarding successor liability." The court granted each defendant's application, stating that "the principles set forth in [Ciluffo] shall apply to this case." It ordered that "if the settlement of [the Property Defendants] exceeds the total provable damages found by the jury, plaintiff will not be entitled to any compensation" from each defendant. The trial court further ruled that "if the settlement of [the Property Defendants] exceeds the total provable damages found by the jury minus the damages found to be attributable" to a specific defendant, "then the amount of this excess shall be credited against the award payable by" that defendant. Finally, the court ordered that "if the settlement of [the Property Defendants] is less than the total provable damages found by the jury minus the damages found to be attributable" to a specific defendant, then "plaintiff shall be permitted to recover the full amount assessed" to that defendant. The court provided hypothetical examples illustrating the manner in which the pro tanto credit would be calculated, depending upon the court's determination of the settling parties' intent and the verdict at trial.

8

Plaintiff moved for reconsideration, arguing that the trial court's orders were in essence a grant of summary judgment notwithstanding the existence of genuine issues of material fact. He also asserted that the court had improperly applied the principles of Ciluffo.

The trial court rejected plaintiff's arguments and denied reconsideration. The court reasoned that its orders "take into account a total amount of damages and then subtract the total amount of damages attributable to the alleged medical malpractice. This math provides the court with enough information to derive damages from the slip and fall."

3.

Pursuant to Rule 2:5-6(a), plaintiff moved for leave to appeal the trial court's interlocutory orders, and the Appellate Division granted leave to appeal.

In a thoughtful and comprehensive opinion by Judge Messano, the Appellate Division acknowledged that under Ciluffo, the Medical Defendants were "entitled potentially to a pro tanto credit against any award based on the plaintiff's prior settlement with the owner of the premises." Glassman, 465 N.J. Super. at 442 (footnote omitted) (discussing Ciluffo, 146 N.J. Super. at 482-83). The court noted, however, that Ciluffo had not addressed "the continued viability of a settlement credit after enactment of the Comparative

9

Negligence Act." Id. at 443. The appellate court concluded that the pro tanto credit envisioned in Ciluffo was a vestige of pre-Comparative Negligence Act common law, and it accordingly rejected the continued application of such credits under the current statutory scheme. Id. at 464-68.

The Appellate Division addressed the manner in which damages should be allocated in a successive-tortfeasor setting in which the plaintiff has settled with the initial tortfeasor. Id. at 446-58. The court rejected the Medical Defendants' contention that the Comparative Negligence Act has no relevance to successive tortfeasors. Id. at 452-53. It recognized, however, that "a successive tortfeasor is liable generally only for damages proximately caused by the independent tortious conduct succeeding the original event." Id. at 451. The court reasoned that in the successive-tortfeasor setting, the Legislature's goal of fair apportionment of damages in accordance with each party's fault is best achieved "by requiring juries to apportion damages between . . . successive [events] and to apportion fault among the parties responsible for each [event]." Id. at 457 (omission and alterations in original) (quoting Campione v. Soden, 150 N.J. 163, 184 (1997)). The Appellate Division stated that "a successive tortfeasor may, upon adequate proof, seek the factfinder's apportionment of damages between those proximately caused by its negligence and those caused by the initial tortfeasor, regardless of whether the initial

10

tortfeasor was adjudged to have been negligent or whether the initial tortfeasor remains in the case." Id. at 454-55 (citing Campione, 150 N.J. at 184).

The Appellate Division thus held that the Medical Defendants were entitled to an allocation of damages between damages attributable to Collum-Glassman's accident at Juanito's and damages that resulted from the Medical Defendants' alleged medical malpractice. Id. at 457-58, 469. As the court explained, if the $1,150,000 settlement between plaintiff and KLE Properties, LLC "is less than the jury's assessment" of damages related to Collum-Glassman's ankle fracture at Juanito's, "plaintiff reaps the result of what may have been a bad bargain, but the Medical Defendants are only responsible for the damages attributable to their negligence." Id. at 469. In contrast, the Appellate Division explained, "[i]f the settlement is more than the jury's assessment, plaintiff receives the benefit, but the Medical Defendants are still responsible only for what the jury has determined is the full measure of the damages attributed to their negligence." Ibid.

The Appellate Division accordingly reversed the trial court's determinations, vacated its orders, and remanded the matter to the trial court for further proceedings. Id. at 446, 468-69.

11

4.

We granted the Medical Defendants' motions for leave to appeal. 245 N.J. 469 (2021).

II.

A.

The Medical Defendants urge us to reaffirm the Ciluffo pro tanto credit, which they view to be consonant with case law recognizing the distinction between joint and successive tortfeasors. They argue that the Comparative Negligence Act governs only cases involving joint tortfeasors, and that it has no bearing on this appeal. The Medical Defendants assert that the Appellate Division's allocation of damages permits a plaintiff who has settled with an initial tortfeasor to achieve a double recovery for the same damages.

B.

Plaintiff argues that we should affirm the Appellate Division's determination that the Comparative Negligence Act abrogates the procedure for the award of a pro tanto settlement credit prescribed in Ciluffo. He contends that the Comparative Negligence Act governs all negligence actions, including actions involving successive tortfeasors as well as actions involving joint tortfeasors. Plaintiff asserts that the Act's application would limit any

damages imposed on the Medical Defendants to the percentage of the harm caused by their negligence, thus avoiding any unfair double recovery.

## III.

## A.

We have not previously addressed the impact of an initial tortfeasor's settlement with a plaintiff on the damages imposed on successive tortfeasors found liable at trial. We find guidance, however, in principles stated by the Legislature and our courts as they have addressed allocation of fault to settling defendants in the more prevalent joint-tortfeasor setting.

## 1.

At common law, prior to the more recent statutory developments in contribution among tortfeasors, "the plaintiff alone controlled where the burden of fault would lie." Young v. Latta, 123 N.J. 584, 588 (1991). The rule also allowed a plaintiff to "control the proportion in which culpable tortfeasors would be responsible for payment"-- that is, the plaintiff "could collect all or any portion of the award from any judgment debtor with available assets." Id. at 588-89. The common law thus "permitted a plaintiff to place the entire burden of fault on one defendant, who was then helpless to shift any of the responsibility to any other joint defendants." Tino v. Stout, 49 N.J. 289, 298 n.3 (1967).

13

In 1952, responding to the "injustice of the common law," the Legislature enacted the first of two statutes that now comprise our allocation-of-fault statutory scheme, the Joint Tortfeasors Contribution Law. Ibid.; see N.J.S.A. 2A:53A-1 to -5. The Law "was enacted to promote the fair sharing of the burden of judgment by joint tortfeasors and to prevent a plaintiff from arbitrarily selecting his or her victim." Holloway v. State, 125 N.J. 386, 400-01 (1991). In the Joint Tortfeasors Contribution Law, the Legislature afforded contribution rights to joint tortfeasors, defined as "two or more persons jointly and severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." N.J.S.A. 2A:53A-1. Under the statute, a defendant who paid the injured person more than that defendant's pro rata[2] share of a judgment -- the total judgment divided by the total number of defendants -- was "entitled to recover the excess from the remaining tortfeasors." Young, 123 N.J. at 589; see also Blazovic v. Andrich, 124 N.J. 90, 103 (1991) (noting that under the Law, a joint tortfeasor's pro rata share of a damages verdict was determined "simply

---

[2] "Pro rata" is defined as "[p]roportionately; according to an exact rate, measure, or interest." Black's Law Dictionary 1475 (11th ed. 2019) (adding as an example to illustrate how the term is used, "the liability will be assessed pro rata between the defendants").

14

by dividing the total verdict by the number of available tortfeasors, that is, those solvent tortfeasors not beyond the reach of process").

The Joint Tortfeasors Contribution Law is silent as to the effect of a settlement between a plaintiff and a joint tortfeasor on the damages imposed on the remaining tortfeasors; the Legislature left that determination to case law. See N.J.S.A. 2A:53A-1 to -5; Young, 123 N.J. at 589 (describing the Joint Tortfeasors Contribution Law as a contribution statute "of a rather simple kind that declares the right to contribution and leaves most questions to the courts" (quotation omitted; no alterations indicated)).

Early case law applying the Joint Tortfeasors Contribution Law entitled non-settling defendants to a credit against the judgment, calculated by determining what the settling defendant would have paid as a pro rata share of the judgment. Judson v. Peoples Bank & Tr. Co. of Westfield, 17 N.J. 67, 92-94 (1954). The pro rata credit reflected "the settler's fair share of the amount of the verdict -- regardless of the actual settlement"; it therefore "represent[ed] the judicial implementation of the statutory right to contribution," obviating the need for the non-settling defendants to pursue a contribution action against the settling defendant. Young, 123 N.J. at 591.

Thus, in cases decided under the Joint Tortfeasors Contribution Law prior to the enactment of the Comparative Negligence Act, "a settlement with a

15

joint tortfeasor, even though for less than a pro rata share of the total claim, reduced the plaintiff's total claim against the nonsettling codefendant or codefendants by the pro rata share and thus barred contribution from the settling tortfeasor," who had no further liability to any party. Cartel Cap. Corp. v. Fireco of N.J., 81 N.J. 548, 569 (1980). The amount of the pro rata credit was determined by dividing the judgment by the number of defendants in the case and involved no assessment of the settling party's fault. Ibid.

2.

When it enacted the Comparative Negligence Act in 1972, the Legislature fundamentally altered the method by which courts determine the impact of the plaintiff's settlement with one joint tortfeasor on the liability of the remaining non-settling tortfeasors. The Act's key reform ameliorated the harsh consequences of the doctrine of contributory negligence, which had barred any recovery under the common law. N.J.S.A. 2A:15-5.1.[3] The Legislature also prescribed a procedure by which the factfinder assesses each

---

[3] Under the Comparative Negligence Act, the plaintiff's contributory negligence does "not bar recovery in an action . . . to recover damages for negligence resulting in death or injury to person or property," as long as the plaintiff's negligence "was not greater than the negligence of the person against whom recovery is sought or was not greater than the combined negligence of the persons against whom recovery is sought." N.J.S.A. 2A:15-5.1. The Legislature determined, however, that "[a]ny damages sustained shall be diminished by the percentage sustained of negligence attributable to the person recovering." Ibid.

16

joint tortfeasor's percentage of fault and the court molds the judgment in accordance with that assessment. N.J.S.A. 2A:15-5.2(a) provides in part that,

> [i]n all negligence actions and strict liability actions in which the question of liability is in dispute, . . . the trier of fact shall make the following as findings of fact:
>
> (1) The amount of damages which would be recoverable by the injured party regardless of any consideration of negligence or fault, that is, the full value of the injured party's damages.
>
> (2) The extent, in the form of a percentage, of each party's negligence or fault. The percentage of negligence or fault of each party shall be based on 100% and the total of all percentages of negligence or fault of all the parties to a suit shall be 100%.

After the jury, or the judge acting as factfinder in a bench trial, assesses each tortfeasor's percentage of fault, the judge "mold[s] the judgment from the findings of fact made by the trier of fact." N.J.S.A. 2A:15-5.2(d).

As later amended, the Comparative Negligence Act authorizes the plaintiff to recover

> a. The full amount of the damages from any party determined by the trier of fact to be 60% or more responsible for the total damages.
>
> . . . .
>
> c. Only that percentage of the damages directly attributable to that party's negligence or fault from any party determined by the trier of fact to be less than 60% responsible for the total damages.

17

[N.J.S.A. 2A:15-5.3(a), (c).]

The Legislature incorporated the right of contribution prescribed by the Joint Tortfeasors Contribution Law into the Comparative Negligence Act's fault-based allocation scheme by allowing "[a]ny party who is compelled to pay more than his percentage share [to] seek contribution from the other joint tortfeasors." N.J.S.A. 2A:15-5.3(e). When the two statutes are applied in tandem, the percentage of a total judgment assessed against a joint tortfeasor is determined not by pro rata allocation of damages, but by the factfinder's determination of the fault of each tortfeasor and, in cases involving contributory negligence, the fault of the plaintiff. See N.J.S.A. 2A:15-5.1, -5.2, -5.3.

Thus, "[t]he pro rata contribution scheme of the Joint Tortfeasors Contribution Law has been eclipsed by the percentage-liability formula established by [N.J.S.A. 2A:15-5.2 and -5.3]." Young, 123 N.J. at 592; see also Cartel Cap., 81 N.J. at 569 ("[T]he Legislature has seen fit to redefine the 'pro rata' allocation to be a party's 'percentage share' in the contribution scheme between and among joint tortfeasors." (quoting Rogers v. Spady, 147 N.J. Super. 274, 277 (App. Div. 1977))).

"When applied together, the Comparative Negligence Act and Joint Tortfeasors Contribution Law implement New Jersey's approach to fair

18

apportionment of damages among plaintiffs and defendants, and among joint defendants." Town of Kearny v. Brandt, 214 N.J. 76, 97 (2013) (no alterations indicated) (quoting Erny v. Estate of Merola, 171 N.J. 86, 99 (2002)). The Comparative Negligence Act and the Joint Tortfeasors Contribution Law together "promote 'the distribution of loss in proportion to the respective faults of the parties causing that loss'" and ensure "that damages are ordinarily apportioned to joint tortfeasors in conformity to the factfinder's allocation of fault." Jones v. Morey's Pier, Inc., 230 N.J. 142, 160 (2017) (quoting Town of Kearny, 214 N.J. at 102).

Like the Joint Tortfeasors Contribution Law, the Comparative Negligence Act does not address the effect of one joint tortfeasor's settlement with the plaintiff on the damages imposed on non-settling tortfeasors. See N.J.S.A. 2A:15-5.1, -5.2, -5.3. In Young, however, we "implicitly recognized 'that a defendant who settles and is dismissed from the action remains a "party" to the case for the purpose of determining the non-settling defendant's percentage of fault.'" Town of Kearny, 214 N.J. at 100 (quoting Brodsky v. Grinnell Haulers, Inc., 181 N.J. 102, 113 (2004)). We held that a non-settling defendant who provides "fair and timely notice" of intent to seek an allocation of fault to a settling defendant at trial, and then proves the settling defendant's fault, is entitled to such an allocation, even if that defendant has filed no

19

crossclaim against the settling defendant. Young, 123 N.J. at 596-97; accord R. 4:7-5(c); Krzykalski v. Tindall, 232 N.J. 525, 535-36 (2018); Town of Kearny, 214 N.J. at 100. As we explained in Town of Kearny,

> [W]hen a defendant ceases to participate in the case by virtue of a settlement, a non-settling defendant who meets the relevant requirements as to notice and proof may obtain an allocation of fault to the settling defendant. The settling defendant does not pay any portion of the judgment; any percentage of fault allocated to the settling defendant operates as a credit to the benefit of the defendants who remain in the case.
>
> [Town of Kearny, 214 N.J. at 100 (citing Young, 123 N.J. at 596-97).]

Thus, under the Legislature's allocation-of-fault statutory scheme as similarly construed in Young, the plaintiff's settlement with one joint tortfeasor may afford a credit to non-settling tortfeasors against the plaintiff's recovery. See ibid.

That credit, however, is not a pro rata credit based on the number of defendants remaining in the case. Young, 123 N.J. at 592; accord Johnson v. Am. Homestead Mortg. Corp., 306 N.J. Super. 429, 436 (App. Div. 1997). Nor is it a pro tanto credit premised on the amount paid by the settling defendant to the plaintiff. Johnson, 306 N.J. Super. at 436-37. The credit, instead, is based on the factfinder's allocation of fault to the settling defendant at trial, with the non-settling defendant bearing the burden of proving the

20

settling defendant's fault.  See Rowe v. Bell & Gossett Co., 239 N.J. 531, 552-55 (2019); Town of Kearny, 214 N.J. at 100-01; Young, 123 N.J. at 591-92.

Indeed, unless the non-settling joint tortfeasor provides fair and timely notice and proves the settling defendant's fault at trial, "there is simply no right in the adjudicated tortfeasors to a reduction of their own separately-allocated responsibility for the verdict," and the settlement has no effect on the damages imposed on the non-settling parties.  Johnson, 306 N.J. Super. at 437; see also Rowe, 239 N.J. at 555-56.

3.

To summarize, our law governing allocation of damages to non-settling joint tortfeasors provides the following core principles.

First, when the Legislature enacted the Comparative Negligence Act, it abandoned common-law pro rata allocation of damages in favor of the factfinder's assessment of the percentage of fault attributable to the alleged joint tortfeasors and, if contributory negligence is proven, to the plaintiff. N.J.S.A. 2A:15-5.2, -5.3.

Second, under the Joint Tortfeasors Contribution Law and the Comparative Negligence Act, the plaintiff's settlement with a joint tortfeasor does not afford to the remaining tortfeasors a pro rata credit premised on the number of defendants or a pro tanto credit based on the amount of the

21

settlement. See N.J.S.A. 2A:15-5.2, -5.3; N.J.S.A. 2A:53A-1. Instead, the non-settling defendant must provide timely notice and prove the fault of a settling defendant in order to obtain a credit against the total verdict based on the factfinder's assignment of a percentage of fault to the settling defendant. Ibid.; see also Krzykalski, 232 N.J. at 535-36; Young, 123 N.J. at 595-96; Restatement (Third) of Torts: Apportionment of Liability (Third Restatement) § 16 (Am. Law Inst. 2000) (addressing the effect of a tortfeasor's settlement on the plaintiff's recovery from other jointly and severally liable tortfeasors).

Third, in joint tortfeasor cases decided under the Comparative Negligence Act, neither the court nor the jury considers the terms of the settlement agreement, and the settling defendant has no further exposure beyond the terms of that agreement. See Rowe, 239 N.J. at 554 (noting that the Court construes the "statutory scheme to authorize an allocation of fault to a settling defendant in appropriate settings, without regard to the amount of the settlement"); Johnson, 306 N.J. Super. at 436 ("[A] plaintiff is entitled to retain the proceeds of the pretrial settlement as well as the full jury verdict as allocated among all other defendants."). Depending on the terms of the settlement and the outcome of the trial, the allocation-of-fault procedure may provide a strategic advantage to either the plaintiff or the non-settling joint tortfeasors. See Young, 123 N.J. at 599 (observing that a plaintiff "cannot

22

complain if the credit works to his or her disadvantage, because any reduction in a plaintiff's recovery is directly attributable to the acceptance of less than the settler's share of total recoverable damages"); Rogers, 147 N.J. Super. at 278 ("[I]f [a] plaintiff makes a particularly good bargain in settlement and the ultimate negligence found attributable to the settling defendant would have resulted in a judgment for less than the amount of [the] settlement, plaintiff will benefit by the excess amount.").

Those principles inform our consideration of the successive-tortfeasor setting of this appeal.

B.

1.

In successive-tortfeasor cases, the plaintiff alleges that the harm was caused by two or more independent torts that occurred at different times and are distinct from one another. See, e.g., Campione, 150 N.J. at 168-70 (stating that the plaintiff alleged harm from sequential motor vehicle accidents); Ciluffo, 146 N.J. Super. at 478-80 (noting that the plaintiff claimed to have been harmed by a combination of her original injury and subsequent medical malpractice); see also Mahoney, Forte & Turpan, N.J. Personal Injury Recovery § 14:8-1 (2021) (observing that successive-tortfeasor allocation issues may arise when "the injured party settled with one tortfeasor and then

23

instituted separate litigation against a person whose subsequent negligence aggravated the initial tort," and that "[t]he subsequent aggravation in those cases typically occurred as a result of medical malpractice").

In contrast to the joint-tortfeasor situations that our courts routinely encounter, successive-tortfeasor settings have been analyzed in few appellate decisions. Indeed, when Ciluffo was decided, neither this Court nor the Appellate Division had addressed the allocation-of-damages question in a successive-tortfeasor case.

2.

In Ciluffo, the plaintiff sustained a neck injury in an accident at a friend's home. 146 N.J. Super. at 479. She was initially treated by a physician at a hospital emergency room and sent home with a cervical collar and medication. Ibid. The following day, a radiologist reviewed the plaintiff's x-rays, summoned her back to the hospital, and ordered further testing, which revealed a fracture of her cervical spine. Ibid. During her treatment for the fracture, the plaintiff developed pneumonia and other complications. Id. at 479-80.

The Ciluffo plaintiff claimed that the owner of the property where she was injured was liable for her injuries and also asserted a medical malpractice claim against her treating physician on the ground that the delay in her

24

treatment prolonged her recovery.  Ibid.  After the plaintiff settled her claim

against the property owner for $30,000, the trial court dismissed her medical

malpractice claim against the physician on two grounds:  her failure to proffer

evidence that the delay in her treatment caused her medical complications, and

her settlement with the property owner, which the court viewed to encompass

all of the damages that the plaintiff had suffered.  Id. at 480.  The plaintiff

appealed.  Id. at 478-79.

Noting that "[w]e are not dealing with a case of joint tortfeasors," id. at

483, the Appellate Division did not premise its decision in Ciluffo on the

allocation-of-fault scheme set forth in the Joint Tortfeasors Contribution Act

and the Comparative Negligence Act.[4]  Instead, the court invoked this Court's

ruling in Daily v. Somberg that a "plaintiff's settlement with and release of [an

initial tortfeasor] would not release" the plaintiff's treating physicians "unless

the release was intended to have that effect."  Id. at 481-82 (citing Daily, 28

N.J. 372, 384 (1958)).  In Ciluffo, the Appellate Division also relied on its

decision in Knutsen v. Brown, which construed a judgment against an initial

---

[4]  The Comparative Negligence Act became effective on August 22, 1973.  See
L. 1973, c. 146, §§ 1 to 3 (codified at N.J.S.A. 2A:15-5.1, -5.2, -5.3).  The Act
thus took effect after the Ciluffo plaintiff's injuries but before the Appellate
Division issued its decision in that appeal.  See Ciluffo, 146 N.J. Super. at 476,
479-80.

25

tortfeasor to also compensate the plaintiff for his claims against subsequent tortfeasors. Ibid. (citing Knutsen, 96 N.J. Super. 229, 235 (App. Div. 1967)).

Based on those decisions, the Appellate Division reasoned in Ciluffo that an initial tortfeasor "is potentially liable for all the natural and proximate injuries that flow from the initial tort," and that the plaintiff's recovery against the first tortfeasor "may include payment for some or all of the injuries later suffered at the hands of a second tortfeasor." Id. at 482 (citing Knutsen, 96 N.J. Super. at 235). The Appellate Division directed trial courts to assess the "injuries caused by the successive independent tortfeasor" and compare them "with the damages recoverable for all of [the plaintiff's] injuries," so that the plaintiff would not obtain a double recovery. Id. at 482-83. It concluded that based on its assessment of the settling parties' intent, a trial court could award the second tortfeasor -- the plaintiff's treating physician -- a pro tanto credit based on the amount of the settlement against the plaintiff's potential recovery at trial. Ibid. The Ciluffo court explained that

> [i]f the settlement exceeds plaintiff's total provable damages she would be entitled to no further recovery from [the physician]. If the settlement exceeds the amount of her provable damages minus the damages caused by [the physician], the amount of such excess should be credited against the damages assessed solely for the harm caused by [the physician]. If the settlement is less than the amount of her total provable damages minus the damages caused solely by [the physician], plaintiff should recover the full amount of

26

> damages assessed against [the physician] alone for the pain and suffering allegedly endured by her during the delay in treatment within the first 24 hours.

> [Ibid.]

The Appellate Division accordingly reversed the trial court's decision dismissing the medical malpractice claim in Ciluffo, and remanded the matter for a new trial. Id. at 483.[5]

---

[5] The Appellate Division invoked Ciluffo in several subsequent decisions but did not apply the pro tanto credit in the circumstances of those cases. See, e.g., Clark v. Univ. Hosp.-UMDNJ, 390 N.J. Super. 108, 119-21 (App. Div. 2006) (recognizing the Ciluffo procedure but affirming the trial court's decision to apportion damages between the initial and subsequent tortfeasors instead of awarding a pro tanto credit to the second tortfeasor); Mitchell v. Procini, 331 N.J. Super. 445, 457 (App. Div. 2000) (reiterating the holding of Ciluffo, but declining to award a pro tanto credit to the non-settling defendant because the plaintiff's contributory negligence "makes it impossible to determine whether plaintiff received full compensation for the acts of the successive tortfeasor"); New Milford Bd. of Educ. v. Juliano, 219 N.J. Super. 182, 187 (App. Div. 1987) (citing Ciluffo for the proposition that "a tortfeasor is responsible for all damages that naturally and proximately flow from the initial tort, including the consequences of medical malpractice in treating the injuries caused by his wrong," but addressing only the plaintiff's right to seek indemnification from the defendant doctors); Gold v. Aetna Life & Cas. Ins. Co., 233 N.J. Super. 271, 278-79 (App. Div. 1989) ("remand[ing] for entry of an order requiring submission to arbitration" and an assessment of the amount of the plaintiffs' damages to determine whether the plaintiffs might be entitled to more than they had already received from a settlement, with an allocation of credits, if necessary); Lewis v. Preschel, 237 N.J. Super. 418, 421-22 (App. Div. 1989) (remanding for a new trial because the jury was not instructed to consider "the extent to which the [defendant's] malpractice, as distinct from the accident-caused initial injury, contributed to the damages proved").

C.

1.

Although we have not previously considered the precise issue raised by this appeal, we briefly addressed the allocation of damages to successive tortfeasors in Campione, 150 N.J. at 184-85. There, the plaintiff was injured in a motor vehicle accident involving two collisions less than a minute apart. Id. at 168-69. The jury awarded $750,000 in damages to the plaintiff and assigned percentages of fault to several defendants involved in one or both collisions, but it was unable to allocate $450,000 of the damages to either the first or second collision. Id. at 171-72. Absent a jury determination as to that portion of the damages, the trial court divided those damages between two defendants and molded the verdict accordingly. Ibid.

The Appellate Division in Campione rejected the trial court's allocation of liability as "an invasion of the jury's province." Id. at 173. It held, however, that when a court determines in a successive-tortfeasor case that the damages are indivisible and cannot be allocated with reasonable certainty, it should impose joint and several liability on the defendants involved in both causative events. Ibid.

Reversing the Appellate Division's determination and reinstating all but one aspect of the trial court's judgment, we acknowledged that the

Comparative Negligence Act "does not specifically address the jury's responsibility in cases involving injuries sustained in successive accidents." Id. at 184. We inferred, however, "that the legislative objective would be achieved by requiring juries to apportion damages between the successive accidents and to apportion fault among the parties responsible for each accident." Ibid. We added a series of "observations," which we categorized as "unnecessary to our disposition":

> In our view, the Act contemplates an allocation of damages caused by successive accidents in order to effectuate the allocation of liability among the responsible defendants. At the conclusion of a trial where allocation of damages among multiple tortfeasors is an issue, the trial court is to determine, as a matter of law, whether the jury is capable of apportioning damages. The absence of conclusive evidence concerning allocation of damages will not preclude apportionment by the jury, but will necessarily result in a less precise allocation than that afforded by a clearer record. If the court establishes as a matter of law that a jury would be incapable of apportioning damages, the court is to apportion damages equally among the various causative events. If the court concludes that the jury would be capable of apportioning damages, the jury should be instructed to do so.
>
> [Id. at 184-85 (citations omitted).]

We thus proposed in Campione a two-step analysis in successive-tortfeasor cases tried before a jury in which the plaintiff does not settle with any defendant prior to trial. Id. at 184-85. First, if the court determines that

29

the jury is capable of dividing the plaintiff's damages between the first and second causative events, it instructs the jury to identify the quantum of damages caused by the first causative event and the quantum of damages caused by the second causative event.  Ibid.  Next, as to each causative event, the jury apportions a percentage of fault to each party alleged to have caused that event.  Ibid.; see also Mahoney, Forte & Turpan, § 15:1-1 ("[W]hen separate elements of damages are attributable to different, but related, events, a two-step process may be necessary.  The trier of fact may be required to apportion damages among two or more causative events, and then to allocate fault among the parties responsible for each event.").

2.

The allocation-of-damages process described in Campione closely resembles the approach adopted in section 26 of the Third Restatement of Torts. That section provides as follows:

> (a) When damages for an injury can be divided by causation, the factfinder first divides them into their indivisible component parts and separately apportions liability for each indivisible component part under Topics 1 through 4 [of this Restatement].
>
> (b) Damages can be divided by causation when the evidence provides a reasonable basis for the factfinder to determine:
>
> > (1) that any legally culpable conduct of a party or other relevant person to whom the factfinder

30

assigns a percentage of responsibility was a legal cause of less than the entire damages for which the plaintiff seeks recovery and

(2) the amount of damages separately caused by that conduct.

Otherwise, the damages are indivisible and thus the injury is indivisible. Liability for an indivisible injury is apportioned under Topics 1 through 4.

[Third Restatement § 26.]

As the Restatement's drafters explained, the two-step procedure "effectuates the basic policies of causation and comparative responsibility. It does not make a plaintiff or a defendant responsible for damages that person did not cause, and it apportions liability among persons causing any component part according to that person's comparative share of responsibility." Id. at cmt. d.

IV.

A.

Against that backdrop, we conclude that the Ciluffo pro tanto credit to a non-settling defendant in a successive-tortfeasor case cannot be reconciled with our statutory and case law as it stands today. We share the Appellate Division's view that the Ciluffo credit is "a vestige of the common law and has no support in our current jurisprudence." Glassman, 465 N.J. Super. at 446.

31

First, although the <u>Ciluffo</u> pro tanto credit found support in pre-Comparative Negligence Act common law jurisprudence, such as this Court's opinion in <u>Daily</u> and the Appellate Division's decision in <u>Knutsen</u>, that credit diverges from the legislative intent expressed in the Comparative Negligence Act.

We acknowledge that the Legislature did not address successive-tortfeasor settings in the Act. <u>See</u> N.J.S.A. 2A:15-5.2, -5.3. The statute's procedure for the allocation of a percentage of fault, premised in part on the right of contribution among joint tortfeasors, applies only to cases in which the responsible parties are alleged to have collectively caused a single harm. <u>Ibid.</u>; <u>see also</u> N.J.S.A. 2A:53A-3 (prescribing a right of contribution for joint tortfeasors).

We agree with the Appellate Division, however, that the Comparative Negligence Act's legislative goal of promoting fault-based allocation of damages provides general guidance for successive-tortfeasor situations. <u>Glassman</u>, 465 N.J. Super. at 452-53. The Legislature clearly expressed that the burden of a damages award should be apportioned not by arbitrary factors such as the number of defendants named in a case, but by the jury's determination of each party's degree of fault. N.J.S.A. 2A:15-5.2, -5.3. Like the common-law pro rata credit for a non-settling party rejected by the

32

Legislature in the Comparative Negligence Act, the common-law pro tanto credit prescribed by Ciluffo, untethered to an assessment of any party's fault, may give rise to arbitrary results. In short, the Ciluffo credit is not consonant with the legislative goal expressed in the current statutory allocation-of-fault scheme.

Second, the pro tanto credit prescribed in Ciluffo is premised on the assumption that when they settled their dispute, the plaintiff and the initial tortfeasor may have intended to resolve some or all of the plaintiff's claims against the successive tortfeasors as well as the claim against the settling tortfeasor. Ciluffo, 146 N.J. Super. at 482-83. Ciluffo thus mandates that the trial court ascertain whether the settlement reflects the parties' mutual intent to resolve claims against non-settling defendants as well as claims against the defendant settling the case, regardless of whether the settlement agreement reveals any hint of such an intent. Ibid. As the Appellate Division has observed, however, "factual and legal issues in the context of settlement negotiations are rarely so clear-cut as to permit a realistic apportionment of the settlement amount." Crispin v. Volkswagenwerk AG, 248 N.J. Super. 540, 570 (App. Div. 1991). Consequently, a court applying Ciluffo may be compelled to premise a pro tanto credit on nothing more than guesswork.

We thus agree with the Appellate Division that that the pro tanto credit for non-settling defendants in successive-tortfeasor cases is incompatible with our statutory allocation-of-fault scheme and our case law as it has developed in the four decades since Ciluffo was decided. Glassman, 465 N.J. Super. at 446-69. We overrule Ciluffo.

B.

Our comparative-fault statutory scheme, our decision in Campione, and section 26 of the Third Restatement of Torts suggest an equitable method of apportioning damages in successive-tortfeasor cases in which the plaintiff has alleged that multiple causative events caused the harm and has settled with the initial tortfeasor prior to trial.[6]

The initial stage of the procedure is the jury's apportionment of damages to each causative event, if the damages are divisible and thus can be apportioned, as in this case.[7]

---

[6] The jury should, of course, apportion damages only if it determines that the plaintiff has proven by a preponderance of the evidence the liability of one or more non-settling defendants. See, e.g., Model Jury Charges (Civil), 1.12(o), "Damages" (approved Nov. 1998) (providing instructions "on the law governing damages" for the jury to consider in the event that it "finds in favor of plaintiff" on the liability issue).

[7] Divisible damages "can occur in a variety of circumstances," including "in cases involving serial injuries, regardless of the length of time between the injuries." Third Restatement § 26 cmt. f. "Damages are indivisible, and thus the injury is indivisible, when all legally culpable conduct of the plaintiff and

34

In the first step of that apportionment process, the non-settling defendant alleged to be responsible for the second causative event may present proof of the damages suffered by plaintiff as a result of the first causative event. See Campione, 150 N.J. at 184; Third Restatement § 26. Among other evidence, the defendant may rely on the plaintiff's previous assertions in pleadings or discovery about the alleged fault of the initial tortfeasor and the damages resulting from the first causative event. A plaintiff who previously asserted in pleadings or discovery that the initial tortfeasor was negligent may not take the opposite position at trial. Cf. Bhagat v. Bhagat, 217 N.J. 22, 36 (2014) ("A party who advances a position in earlier litigation that is accepted and permits the party to prevail in that litigation is barred from advocating a contrary position in subsequent litigation to the prejudice of the adverse party."); McCurrie v. Town of Kearny, 174 N.J. 523, 533 (2002) (holding that the defendant municipality's "about-face is a blatant violation of the principle of judicial estoppel, which precludes a party from taking a position contrary to the position he has already successfully espoused in the same or prior litigation"). In such a setting, however, the plaintiff may urge the jury to

---

every tortious act of the defendants and other relevant persons caused all the damages." Id. at cmt. g.

35

apportion only a minor component of the damages -- or none at all -- to the first causative event.

Next, the trial court should instruct the jury to quantify the damages resulting from the first causative event. Campione, 150 N.J. at 184-85; Third Restatement § 26(a). In a case such as this, in which the first causative event alleged is Collum-Glassman's accident at Juanito's, the court should instruct the jury to decide what amount of damages, if any, the plaintiff suffered as a result of that accident. To prevent a double recovery, the damages that the jury attributes to the first causative event -- here, the plaintiff's accident at Juanito's -- should not be included in any judgment entered against the Medical Defendants.

The trial court should not disclose to the jury the amount paid by the initial tortfeasor to settle with the plaintiff; the settlement amount has no bearing on the jury's inquiry. See Jones, 230 N.J. at 162; Town of Kearny, 214 N.J. at 103-04; Young, 123 N.J. at 595-96. Nor should the trial court charge the jury to assign a percentage of fault to any settling tortfeasor involved in that initial causative event, or to make any other determination regarding that event. The plaintiff's settlement with the tortfeasors allegedly responsible for that initial causative event obviates the need for any further inquiry regarding that event.

36

The trial court should also instruct the jury to determine the amount of damages that resulted from the second causative event. In this case, if the jury determines that the plaintiff has proven his claim that one or more of the Medical Defendants committed medical malpractice, it should be directed to then decide what amount of damages, if any, the plaintiff suffered as a result of that malpractice. The amount of damages that the jury attributes to the second causative event -- the medical malpractice -- would constitute the total damages awarded to plaintiff in the judgment to be entered by the trial court.

In the second stage of the apportionment process, the trial court should instruct the jury to apportion fault among the non-settling defendants as joint tortfeasors, in accordance with N.J.S.A. 2A:15-5.2(a). Campione, 150 N.J. at 184.[8] In this case, if the jury were to conclude that plaintiff proved the liability of one or more of the Medical Defendants for medical malpractice, the jury would assign a percentage of fault to any such defendant, with the percentages adding up to one hundred percent. N.J.S.A. 2A:15-5.2(a)(2). The court would then mold the total judgment -- the amount of damages attributed by the jury to the medical malpractice -- in accordance with the percentage of fault allocated to each defendant. N.J.S.A. 2A:15-5.2(d).

---

[8] In a case in which the non-settling defendants prove the plaintiff's contributory negligence in the second causative event, the jury would also allocate a percentage of fault to the plaintiff pursuant to N.J.S.A. 2A:15-5.2.

37

## C.

We recognize that this two-stage apportionment process for successive tortfeasors is more complex than the familiar procedure conducted in joint-tortfeasor cases involving settling defendants. See Town of Kearny, 214 N.J. at 100; Young, 123 N.J. at 596-97. In the unusual setting of a successive-tortfeasor case, apportionment will require careful oversight by our skilled and seasoned civil trial courts.

We share the Appellate Division's view, however, that this process furthers the Legislature's intent when it enacted the Comparative Negligence Act because it ensures that damages are allocated by the factfinder based on the evidence presented at trial. Glassman, 465 N.J. Super. at 457. Depending on the amount of the settlement and the jury's determinations based on the evidence, apportionment of damages may provide a strategic advantage to a plaintiff, or it may operate to the non-settling defendants' advantage. As the Appellate Division observed, the process "is fair and wholly consonant with the developments in our law since Ciluffo was decided." Id. at 469.

## V.

The judgment of the Appellate Division is affirmed as modified, and the matter is remanded to the trial court for further proceedings in accordance with this opinion.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in JUSTICE PATTERSON's opinion.